**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Charles Armen CALABRESE, Samuel Ray Calabrese, Charles R. Knowles, Defendants-Appellants.**

**Nos. 79–1388, 79–1390 and 79–1392.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 5, 1980.

Decided March 26, 1981.

Certiorari Denied May 26, 1981.

See 101 S.Ct. 3008.

James N. Barber of Barber, Verhoef & Yocom, Salt Lake City, Utah, for defendant-appellant Charles Armen Calabrese.

Oscar Goodman, Las Vegas, Nev., for defendant-appellant Samuel Ray Calabrese.

Michael Allen Straud, Aurora, Colo., for defendant-appellant Charles R. Knowles.

John Depue, Dept. of Justice, Washington, D. C. (with Ronald L. Rencher, U. S. Atty., Salt Lake City, Utah, on briefs), for plaintiff-appellee United States of America.

Before McKAY, BREITENSTEIN and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

### Facts

Defendants Samuel Calabrese, Charles Calabrese and Charles Knowles were convicted of sixteen counts of interstate transportation of stolen property (18 U.S.C. § 2314), one count of engaging in a pattern of racketeering activity (18 U.S.C. § 1962(c)), and one count of conspiring to participate in racketeering activity (18 U.S.C. § 1962(d)). The indictment charged that defendants used a Utah building supply company to obtain building materials on credit with no intention of paying for them. The merchandise was allegedly transported to Nevada and California and sold.

### Double Jeopardy

Defendants' first trial ended in a declaration of mistrial. Counsel for a co-defendant who was eventually acquitted attempted to impeach a government witness by inquiring whether the witness had lied in a pauper's affidavit filed in an earlier criminal proceeding. The examination revealed that the attorney had represented the witness in the earlier proceeding and had prepared the affidavit he was using for impeachment.

The trial judge stopped the questioning and conducted a hearing outside the jury's presence. The judge expressed concern that an attorney's impeachment of a former client with information obtained in their professional relationship made the attorney both a witness and an advocate for his position, injured the attorney-client relationship, and would bring disrespect upon lawyers and the court.

After discussion of the courses available to cure the impropriety, counsel for Samuel

Calabrese recommended mistrial as the only viable alternative. The attorneys for Knowles and Charles Calabrese joined in the motion, but the latter subsequently withdrew from it. The government opposed the motion. After further discussion of the alternatives, the judge agreed that a mistrial was necessary. Upon later inquiry by counsel, the judge explained that the mistrial "motion was granted *sua sponte* taking into consideration the previous motions for mistrial that were made." (Record, supp. vol. A, at 42).

Prior to the commencement of the second trial, defendants moved for dismissal of the indictment on double jeopardy grounds. The court denied the motions, reminding counsel that their motions had prompted the mistrial declaration and finding, in any event, that the mistrial had been warranted by manifest necessity.

 A defendant may not be retried after a declaration of mistrial unless the defendant requested or consented to the mistrial or unless there was "manifest necessity" for the mistrial. *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978); *United States v. Dinitz*, 424 U.S. 600, 607–08, 96 S.Ct. 1075, 1079–1080, 47 L.Ed.2d 267 (1976) (quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824)). Because we find that there was manifest necessity for the mistrial declaration, we need not decide whether any defendant was barred from objecting to reprosecution by requesting or consenting to the mistrial.

We note first that the mistrial declaration was not caused by prosecutorial or judicial overreaching. *Cf. United States v. Scott*, 437 U.S. 82, 94, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978); *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976). The impropriety was introduced by a defense attorney, and the government strenuously opposed the mistrial motion.

The words "manifest necessity" "do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge." *Arizona v. Washington*, 434 U.S. 497, 506, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978) (footnote omitted). The court below was confronted with a kaleidoscope of problems, including a possible violation of the attorney-client privilege, the attorney's role as both an advocate and a witness in the proceedings, and a controversy over the ethical propriety of the attorney's prior representation of the witness. The testimony placed the attorney's ethics in issue because he had prepared the allegedly false pauper's affidavit. The exchange was prejudicial to all defendants because the jury would tend to associate this attorney and his client with co-counsel and their clients. Counsel for Samuel Calabrese and Knowles told the court they felt obligated to call the attorney as a witness on credibility. This would have deepened the conflict between the attorney's role as advocate and witness and would have exacerbated the controversy over the attorney's ethics.

The record reveals that before declaring the mistrial the court considered a number of less drastic alternatives, including severing the trial of the defendant whose attorney had caused the impropriety, permitting him to obtain new counsel, and restricting the scope of cross-examination insofar as it related to disclosure of privileged communications. However, the court was not required to accept a solution which remedied only one of the problems or offered only temporary relief. A severance or substitution of counsel would not have removed the ethical issues raised in the jurors' minds or eliminate the other defendants' interest in impeaching the witness through use of the pauper's affidavit. Limiting the scope of cross-examination would have provided only limited relief, since counsel for two defendants indicated they would be obligated to call the attorney as a witness on the credibility issue. These or other remedial measures would not have necessarily removed the risk of bias created by the questions raised about the attorney's ethics. "[T]he overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the

trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected . . . ." *Arizona v. Washington*, 434 U.S. 497, 511, 98 S.Ct. 824, 833, 54 L.Ed.2d 717 (1978). Therefore we sustain the trial court's finding that there was "manifest necessity" for a declaration of mistrial.

### Motion for Change of Venue

■ Prior to trial, Charles Calabrese unsuccessfully moved for change of venue from the District of Utah to the District of Nevada on the grounds that he, another defendant, and witnesses they intended to call resided in Nevada, that the cost of transporting and housing the witnesses would constitute an undue burden, and that the character witnesses enjoyed reputations for integrity in Las Vegas and therefore would be more persuasive to a jury in Las Vegas.

Fed.R.Crim.P. 21(b) permits a court upon motion to transfer a proceeding to another district "[f]or the convenience of parties and witnesses, and in the interest of justice." The decision whether to grant a motion for change of venue rests largely in the sound discretion of the trial judge. *United States v. Jobe*, 487 F.2d 268, 269–70 (10th Cir. 1973), *cert. denied*, 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974); *Wheeler v. United States*, 382 F.2d 998, 1001–02 (10th Cir. 1967).

While the factors cited would support the granting of the motion, when weighed in context they do not compel that result. The business enterprise that was alleged to be the front for perpetration of the fraudulent scheme was located in Utah. Eight of the government's witnesses resided in Utah, and the offices of most of the victimized building supply firms were in Utah. Utah was "the location of events likely to be in issue," as well as "the location of documents and records likely to be involved." *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240, 244, 84 S.Ct. 769, 771, 11 L.Ed.2d 674 (1964). The trial judge did not abuse his discretion in denying the motion for change of venue.

### Severance

Samuel Calabrese and Knowles claim that the trial judge abused his discretion by denying their motions for severance.

■ Contrary to Calabrese's contention, his defense was not directly antagonistic to Knowles' defense, and severance was not required. Knowles, who managed the business in Utah, testified that his inability to pay creditors was caused by the bank's refusal to honor checks written by Samuel Calabrese, who received the merchandise in Nevada. Calabrese's defense was not inconsistent with this testimony. Calabrese testified that he had stopped payment on certain checks because he had received insufficient merchandise to warrant the payment or because he intended to substitute checks for smaller amounts to facilitate collection. Both defendants testified that other payments were completed. Both defendants sought to demonstrate that they lacked the requisite intent to defraud. Neither accused the other of criminal culpability or of possessing the intent to defraud. Therefore, it was not the case that the defenses were irreconcilable, or that " 'the jury [would] unjustifiably infer that this conflict alone demonstrates that both are guilty.' " *United States v. Becker*, 585 F.2d 703, 707 (4th Cir. 1978) (quoting *United States v. Ehrlichman*, 546 F.2d 910, 929 (D.C.Cir. 1976), *cert. denied*, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 570 (1977)), *cert. denied*, 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 50 (1979). One defendant's attempt to cast blame on the other is not in itself a sufficient reason to require separate trials. *United States v. Ready*, 574 F.2d 1009, 1015 (10th Cir. 1978).

Samuel Calabrese complains that the joint trial prejudiced him by necessitating his taking the stand to rebut Knowles' testimony and thus exposing him to the revelation of his former convictions. Severance would not have alleviated this problem, however, since Knowles' testimony concerning the dishonored checks was a repetition of the testimony of government witnesses, particularly the building supply company's president.

Calabrese also contends that separate trials would have avoided the impropriety leading to the mistrial declaration. While this may be true, we cannot by hindsight find an error on this basis. A rule requiring separate trials whenever the unexpected conduct of one attorney or defendant might prejudice another would preclude the use of joint trials altogether, a result unsupported by authority. While that and other risks which typically attend joint trial should always be present in the mind of the trial court when considering severance motions, the fact that the impropriety ultimately occurs does not, standing alone, render the court's advance decision an abuse of discretion.

Knowles argues that a severance was required because the evidence of Samuel Calabrese's disposal of the merchandise, threat to a driver, and prior convictions of similar charges made it impossible for Knowles to receive a fair trial. However, since Samuel Calabrese's efforts to dispose of the merchandise and his threat were part of the conspiracy alleged in the indictment, evidence of them would have been admissible against Knowles in a separate trial. The unsavory reputation and prior convictions of co-defendants are not grounds for severance. *United States v. Knowles*, 572 F.2d 267, 270 (10th Cir. 1978); *United States v. Baldarrama*, 566 F.2d 560, 569 (5th Cir.), *cert. denied*, 437 U.S. 906, 98 S.Ct. 3094, 57 L.Ed.2d 1136 and 439 U.S. 844, 99 S.Ct. 140, 58 L.Ed.2d 145 (1978). We believe that this evidence did not sufficiently prejudice Knowles so as to deny him the right to a fair trial.

"To establish abuse of discretion more is required than that separate trials might have offered a better chance for acquittal of one or more of the accused." *United States v. Knowles*, 572 F.2d 267, 270 (10th Cir. 1978). The district court did not abuse its discretion in refusing to grant the severance motions made by Samuel Calabrese and Knowles.

### Sufficiency of the Evidence

■ Conviction of defendants under 18 U.S.C. § 2314 requires the government to prove beyond a reasonable doubt that defendants (1) transported in interstate commerce (2) stolen goods (3) worth $5,000 or more, (4) knowing at the time of the transportation that the goods were stolen. *Anderson v. United States*, 406 F.2d 529, 531 (8th Cir. 1969). Defendants challenge the sufficiency of the evidence as to some of these elements. In reviewing the jury's verdicts, we must view the evidence in the light most favorable to the government and determine whether a reasonable juror could be convinced beyond a reasonable doubt of each defendant's guilt as charged. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Johnson*, 589 F.2d 716, 720 (D.C. Cir.1978). An examination of the evidence under this standard reveals that it was sufficient to support the verdicts.

■ Knowles argues that the evidence failed to establish the source of the transported merchandise and thus failed to prove it was stolen. However, the evidence showed that the building supply company purchased merchandise on credit from the defrauded suppliers for the purpose of transmitting it to the Calabrese brothers in Nevada. Also, the company president testified that his practice was to list the prices for the merchandise on the invoices and send the priced invoices to the Calabrese brothers *after* he received the wholesale prices from the defrauded suppliers. This testimony indicates that the shipped merchandise came from the defrauded suppliers. Lastly, two witnesses testified that merchandise delivered to the out-of-state outlets came from one of the defrauded creditors.

Knowles and Samuel Calabrese contend that the government failed to prove that the truckloads of transported building materials each had a value of $5,000 or more. However, the invoices provided ample proof that each truckload contained stolen goods worth at least $5,000. *See United States v. Jones*, 421 F.2d 841, 842 (4th Cir. 1970).

Knowles challenges the sufficiency of proof of the *mens rea* element. We believe,

however, that the evidence on this issue was sufficient. The evidence showed that Knowles made numerous misrepresentations concerning the destination of the merchandise and the ultimate recipient's solvency. He told a witness that the company president would "stay up front and take the heat" that might result from Knowles' dealings through the building supply company. (Record, vol. 5, at 473). When the company president told Knowles that a creditor believed "that there is a rip off going on and that you are involved in it," Knowles responded, "I am." (Record, vol. 4, at 136).

Charles Calabrese challenges the sufficiency of the evidence as to all counts. The evidence showed that he set up the initial meeting between some of the conspirators. He ordered appliances from the Utah building supply company and assisted in receiving merchandise at the Nevada outlet. He attempted to sell merchandise below cost and made false representations about the source of goods. He also sought to deceive purchasers about the source of merchandise by directing a truck driver to remove the signs from a truck and by counseling the driver to tell purchasers that he didn't know where the goods came from. He threatened the driver that failure to cooperate would result in death.

Therefore, there was abundant circumstantial evidence that Charles Calabrese entered into the agreement and abundant direct evidence that he was one of the principal actors in the conspiracy. Since the evidence showed that the acts of interstate transportation were objectives of the conspiracy, defendant's conviction on each of the interstate transportation counts and on the count charging a pattern of racketeering activity were also clearly supported by the evidence. *Pinkerton v. United States*, 328 U.S. 640, 645–48, 66 S.Ct. 1180, 1183–1185, 90 L.Ed. 1489 (1946).

*Declarations of Co-conspirators*

■ Charles Calabrese protests the admission into evidence of co-conspirators' declarations under Fed.R.Evid. 801(d)(2)(E).

In *United States v. Andrews*, 585 F.2d 961, 965 (10th Cir. 1978), we held that prior to admitting a co-conspirator's declaration under Fed.R.Evid. 801(d)(2)(E) the district court judge must determine from independent evidence that it was more likely than not that a conspiracy existed, that defendant and the declarant were members of the conspiracy, and that the declaration was made during the course of and in the furtherance of the objects of the conspiracy. *See United States v. Petersen*, 611 F.2d 1313, 1330 (10th Cir. 1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980). We also said that "[e]vidence of the acts and statements of other co-conspirators may be admitted prior to demonstrating participation in the conspiratorial scheme by the objecting defendant, providing the foundation is subsequently laid." *United States v. Andrews*, 585 F.2d at 966.

These procedures were followed here. The district court admitted the statements conditionally. At the close of the government's case, the court found that a preponderance of independent evidence demonstrated the conspiracy's existence and the defendants' membership in the conspiracy. Since the declarants were defendants, the court effectively found that the declarants were also members of the conspiracy. At the close of all the evidence, the district court repeated its finding that a preponderance of independent evidence showed the conspiracy's existence.

The record makes clear that the trial judge had *Andrews* in mind and understood his responsibility under the *Andrews* standards. Although he did not explicitly say that the statements were made during the course of and in furtherance of the conspiracy, the record clearly reveals that the statements satisfied this test. Under these circumstances, we cannot say that a reversible error was made.

Calabrese argues that the trial court must determine the conspiracy's existence *prior* to the admission of co-conspirators' statements. In *United States v. Petersen*, 611 F.2d 1313, 1330 (10th Cir. 1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2985, 64

L.Ed.2d 854 (1980), we adopted the procedures set forth in *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). The procedures provide

> that it is preferable, whenever possible, to require the Government to first introduce independent proof of the conspiracy and, subsequent thereto, to establish the connection of the defendant with the conspiracy before admitting hearsay declarations of co-conspirators. However, . . . in certain instances where it is not "reasonably practicable to require the showing to be made before admitting the evidence, the court may admit the statements subject to being connected up."

*United States v. Petersen*, 611 F.2d at 1330 (quoting *United States v. James*, 590 F.2d at 582).

We do not wish to intimate that a district court may depart from the preferred order of proof without some substantial reason for doing so. However, we believe that the district court did not abuse its discretion in this case, particularly since the trial was held before the *Petersen* procedures were announced by this court.

### Prior Misconduct

■ Knowles argues that evidence of other acts of misconduct was improperly admitted at trial. Fed.R.Evid. 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Knowles' defense was that he intended to operate a legitimate business, and that his inability to pay creditors was the result of Samuel Calabrese's failure to pay for goods promptly rather than the result of a fraudulent scheme. To support his defense, Knowles introduced testimony that he contributed lumber to the enterprise and lost this investment when the business collapsed. To rebut this defense, the government elicited testimony from a witness that Knowles told him he had obtained the lumber on credit and that the seller was attempting to repossess it. The witness testified that Knowles said, "My name is crime and crime doesn't pay. I have countersued [the seller] through my attorney." (Record, vol. 5, at 484).

These statements were relevant and admissible because they contradicted Knowles' claim, central to his defense, that he suffered a personal financial loss in the lumber company's demise. Evidence of other misconduct is admissible to show intent when, as here, intent is in issue. *See* 2 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 404[12] (1980). The government's evidence tended to rebut Knowles' claim that he was a victim of circumstances and did not intend to defraud the enterprise's creditors. *See United States v. Jacobson*, 578 F.2d 863, 866 (10th Cir.), *cert. denied*, 439 U.S. 932, 99 S.Ct. 324, 58 L.Ed.2d 327 (1978).

Testimony was also admitted concerning Knowles' alleged use of forged cashier's checks in an unrelated transaction. The trial court ordered that some of the testimony be stricken from the record, and we believe that the remaining portion of the testimony constituted harmless error.

### Prior Conviction

■ The government sought to elicit from Knowles an admission that nine years before trial he was convicted of an offense. Knowles' response revealed that the conviction was beyond the ten-year period established by Fed.R.Evid. 609 for admissibility of prior conviction evidence. The trial judge sustained objections to the question and instructed the jury to disregard it. When considered in context, the procedures followed by the trial court were not an abuse of its discretion.

### The Trial Court's Instructions to the Jury

■ Samuel Calabrese challenges certain of the trial judge's instructions to the jury. He contends that the jury should not have been instructed that "[t]here is noth-

ing peculiarly different in the way a jury should consider the evidence in a criminal case from that in which all reasonable persons treat any question depending on the evidence presented them." (Record, supp. vol. 5, at 36–37). Although this instruction has been expressly disapproved in this circuit, *United States v. Pepe*, 501 F.2d 1142, 1144 (10th Cir. 1974), it has been held not to be reversible error when there are repeated references to the reasonable doubt standard elsewhere in the instructions. *Id.* at 1143–44; *United States v. Partin*, 552 F.2d 621, 643 (5th Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977). Here the instructions mentioned the reasonable doubt standard at least twenty-one times and the court explained that "[a] reasonable doubt exists whenever after careful and impartial consideration of all the evidence in the case the jurors do not feel convinced to a moral certainty that a defendant is guilty of a charge." [1] (Record, supp. vol. 5, at 35). *See United States v. Pepe*, 501 F.2d at 1143–44. It must also be remembered that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Therefore, although we repeat our disapproval of this instruction, we hold that it was not reversible error in light of other instructions given by the trial court.

 Relying on *United States v. Stanfield*, 521 F.2d 1122 (9th Cir. 1975), defendant challenges the court's instruction that "[y]our sole interest is to ascertain the truth from the evidence in this case." (Record, supp. vol. 5, at 38). In *Stanfield* the trial judge's unorthodox opening remarks may have left the jurors with the understanding that it was their duty "to decide the case only by determining which of the two sets of purported facts was "true" without regard to the reasonable doubt standard. *Id.* at 1126. By contrast, the instruction here was simply an explanation that the jury's

duty included resolving credibility issues, and did not create the impression that the jury's duty was merely to adopt one of two versions of the facts, regardless of the reasonable doubt standard.

Samuel Calabrese failed to raise at trial his other objections to the instructions. We have determined that the challenged instructions do not constitute plain or grave error amounting to the denial of a fundamental right. No other review is required. *United States v. Harper*, 579 F.2d 1235, 1239 (10th Cir.), *cert. denied*, 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978); *Lowther v. United States*, 455 F.2d 657, 664 (10th Cir.), *cert. denied*, 409 U.S. 857, 887, 93 S.Ct. 139, 114, 34 L.Ed.2d 102, 144 (1972).

### Request for Written Instructions

 Knowles contends that the trial judge improperly denied his request for written jury instructions. Giving the jury a copy of the instructions is desirable in complex cases, *see United States v. Standard Oil Co.*, 316 F.2d 884, 896 (7th Cir. 1963), but the practice is within the sound discretion of the trial judge. *Oertle v. United States*, 370 F.2d 719, 729 (10th Cir. 1966), *cert. denied*, 387 U.S. 943, 87 S.Ct. 2075, 18 L.Ed.2d 1329 (1967); *United States v. Conley*, 503 F.2d 520, 522 (8th Cir. 1974). We find no abuse of that discretion here.

### Multiplicity and Duplicity

 Knowles argues that a number of the counts alleging interstate transportation of stolen property were multiplicitous and duplicitous, because in some instances the contents of several truckloads of stolen merchandise were recorded on a single invoice form, and in other instances two invoice forms were used to list the contents of a single truckload. The number of invoice forms used to record merchandise, however, is irrelevant. The gravamen of a violation of 18 U.S.C. § 2314 is transportation of stolen goods in interstate commerce. Each

---

1. Contrary to defendant's contention, the "moral certainty" definition as employed in the circumstances here was at most curative, and not objectionable. *See United States v. Pepe*, 501

F.2d 1142, 1143 (10th Cir. 1974); *United States v. Smaldone*, 485 F.2d 1333, 1348 (10th Cir. 1973), *cert. denied*, 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974).

act of interstate transportation involving goods of the requisite jurisdictional amount is chargeable as a separate offense. *See United States v. Gotches*, 547 F.2d 80, 82 (8th Cir. 1977); *United States v. Dilts*, 501 F.2d 531, 534 (7th Cir. 1974); *see also Badders v. United States*, 240 U.S. 391, 394, 36 S.Ct. 367, 368, 60 L.Ed. 706 (1916). Therefore, the counts were not multiplicitous or duplicitous.

Knowles' argument that grouping two invoices in a single count is an improper means of achieving the § 2314 jurisdictional amount is similarly flawed. It is of no consequence that the property in a single truckload was represented by more than one invoice.

### *Pattern of Racketeering Activity*

■ Knowles argues that the interstate transportation of numerous truckloads of stolen building materials did not constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1), because the transactions were between the same parties and thus constituted "a single customer transaction." The clear language of the statute refutes this argument. Section 1961(1) defines "racketeering activity" as "(B) any act which is indictable under . . . [18 U.S.C.] sections 2314 and 2315." Section 1961(5) defines a "pattern of racketeering activity" as "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter, and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." The government established the § 2314 offenses and proved they were committed within the statutory period and pursuant to a single, continuing enterprise. *See United States v. Kaye*, 556 F.2d 855, 860–61 (7th Cir.), *cert. denied*, 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977). Thus the government proved a pattern of racketeering activity.

### *Pretrial Agreement*

Knowles contends that the government improperly withdrew from a pretrial agreement in which defendant agreed to plead guilty to the conspiracy count and testify truthfully in the grand jury and trial proceedings and the government agreed to dismiss the remaining counts at the sentencing stage. Before trial, the government advised Knowles' attorney by letter that it considered the agreement null and void because of Knowles' failure to abide by its provisions and that it intended to prosecute Knowles on all counts. The government filed a sealed copy of the letter with the trial court.

Defendant apparently did not object to this letter at the time. Neither did he plead guilty to any count or testify for the government. Following his prosecution and conviction on all counts, defendant moved to vacate the sentence, alleging that the government had breached the agreement and requesting a hearing.

The government's response included a sworn statement by a Department of Justice attorney attesting that after signing the agreement defendant refused to give any statement to the F.B.I. agent who repeatedly attempted to interview him and that defendant notified the agent that he would not cooperate in the investigation or testify at trial. The statement also attested that the attorney later met with defendant and told him that defendant had failed to abide by the plea agreement's terms, and that he must advise the attorney within one week whether he intended to plead guilty and testify for the government. Defendant replied that he would talk to his counsel and notify the government attorney of his decision. However, the government attorney heard nothing thereafter from the defendant or his counsel regarding a guilty plea or testimony.

The government argued that defendant's conduct violated the agreement, and the government particularly pointed to language in the agreement providing that [t]he defendant, CHARLES R. KNOWLES, understands and agrees that if he wilfully fails to comply with any part of this agreement, or that if he fails to tell the complete and entire truth as to any material matter to agents or attor-

neys for the United States, or if he fails or refuses to testify truthfully as to any material matter in any Grand Jury or trial proceeding, this agreement is null and void, [and] all charges can and will be brought against him. . . .

(Record, Pleadings, vol. 2, at 215).

The district judge denied defendant's motion to vacate, specifying that he believed that defendant had the burden of proving a breach by the government, but that in any event the government had introduced a sworn statement alleging facts amounting to breach, and the defendant had produced no evidentiary support for his assertion of breach by the government.

 Courts have frequently looked to contract law analogies in determining the rights of defendants aggrieved in the plea negotiation process. *See Cooper v. United States*, 594 F.2d 12, 15–16 (4th Cir. 1979); Westen & Westin, *A Constitutional Law of Remedies for Broken Plea Bargains*, 66 Cal. L.Rev. 471, 530 (1978). It is clear that a defendant's failure to fulfill the terms of a pretrial agreement relieves the government of its reciprocal obligations under the agreement. *United States v. Simmons*, 537 F.2d 1260, 1261 (4th Cir. 1976); *United States v. Resnick*, 483 F.2d 354, 358 (5th Cir.), *cert. denied*, 414 U.S. 1008, 94 S.Ct. 370, 38 L.Ed.2d 246 (1973); *United States v. Nathan*, 476 F.2d 456, 459 (2d Cir.), *cert. denied*, 414 U.S. 823, 94 S.Ct. 171, 38 L.Ed.2d 56 (1973).

The analogy to contract law doctrines is not determinative in the area of plea negotiation, however. Because important due process rights are involved, plea negotiations must accord a defendant requisite fairness and be attended by adequate "safeguards to insure the defendant what is reasonably due [in] the circumstances." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); *see*

*Cooper v. United States*, 594 F.2d 12, 15–20 (4th Cir. 1979).

 We believe that one requisite safeguard of a defendant's rights is a judicial determination, based on adequate evidence, of a defendant's breach of a plea bargaining agreement. The question of a defendant's breach is not an issue to be finally determined unilaterally by the government. *United States v. Simmons*, 537 F.2d 1260, 1261–62 (4th Cir. 1976). If the pleadings reveal a factual dispute on the issue of breach, the district court must hold a hearing to resolve the factual issues. If the pleadings reveal no disputed factual issues, no hearing is necessary and the court may determine the issue of breach as a matter of law.

 We believe that constitutional principles of fairness also require that once the government acknowledges the existence of an agreement, the government has the burden of establishing a breach by the defendant if the agreement is to be considered unenforceable.

 In this case there was a judicial determination of breach. Although the trial judge incorrectly believed that the burden of persuasion was on defendant, he did not rest his decision on that belief, but rather weighed the government's sworn statement against the "complete absence of evidentiary support for defendant's assertion that the government breached the agreement." (Record, Pleadings, vol. 2, at 230–31). Since defendant failed to produce an affidavit or any other evidence raising a factual dispute,[2] summary disposition of the issue was proper.

The above framework and analysis assume that defendant had an adequate opportunity to respond to the government's pleadings on the issue of breach. This as-

---

2. Defendant's attorney alleged in an unsworn pleading that the F.B.I. agent "harassed [defendant] in such a manner as to prevent cooperation." (Record, Pleadings, vol. 2, at 222). Were this allegation submitted in a sworn statement it arguably might have sufficiently disputed the government's sworn statement to

warrant an evidentiary hearing on the issue of breach. However, we think that the trial judge could have properly concluded that defendant's subsequent conversation with the government attorney and his failure to contact the attorney, plead guilty, or testify constituted a breach of the agreement.

sumption, however, is put at issue by the record. The defense attorney's reply to the government's sworn statement alleged that defendant had been transferred from the county jail to a federal facility and that defense counsel had not yet learned of defendant's whereabouts at the time of filing the reply. Therefore, we remand to the district court for a determination whether, between the filing of the government's sworn statement and the court's order, defendant had an adequate opportunity to supplement his pleadings with an affidavit or other documents disputing the facts alleged in the government's statement. If he did not, the trial court must allow defendant to file such documents and must then redetermine the issue of breach under the framework outlined above. If defendant's failure to file such documents before the motion was denied was caused by the fault of defendant or his counsel rather than by the government's exercise of control over defendant in transferring him to another facility, defendant will not be allowed to file such documents, and the trial court's order will be affirmed.

The judgments in Nos. 79–1388 (Charles Armen Calabrese) and 79–1390 (Samuel Ray Calabrese) are severally affirmed. In No. 79–1382 (Charles R. Knowles) the case is remanded for further proceedings in light of this opinion.