UNITED STATES of America, Plaintiff,

v.

Jean Edward PACKWOOD, Defendant.

No. CR–86–938–WWS.

United States District Court,
N.D. California.

Sept. 15, 1987.

Floy E. Dawson, Asst. U.S. Atty., San Francisco, Cal., for plaintiff.

Barry J. Portman, Asst. Federal Public Defender, San Francisco, Cal., for defendant.

## MEMORANDUM OF OPINION AND ORDER

WILLIAM W SCHWARZER, District Judge.

Defendant Jean Packwood ("Packwood") is currently under indictment for the murder of Jeanette Pimentel. He has moved to dismiss the indictment on the ground that a plea agreement executed on June 5, 1980, bars the present prosecution.

In its opposition, the government contends that Packwood has materially breached the terms of the agreement and thereby forfeited its protection.

In the course of its original investigation of the murder, the government had interrogated Packwood several times but had not indicted him. He had admitted complicity in several bank robberies and stated that his friend Donald Desbiens had asked him to kill Pimentel but that he had refused. He also suggested that Desbiens himself had committed the murder.

Following these discussions and the indictment of Packwood for the bank robberies, the public defender representing him entered into plea negotiations with the government. An assistant U.S. attorney drafted a plea agreement under which Packwood agreed to plead guilty to one count of bank robbery and to cooperate in the investigation of the robberies and the murder of Pimentel. Packwood accordingly pled guilty and was sentenced to six years. The plea agreement contains the following provisions relating to Packwood's cooperation with the government:

> Mr. Packwood agrees to furnish full and complete cooperation to the Federal Grand Jury of the Northern District of California and to the United States Attorney's Office and its investigative agencies, including immediate, full, complete and truthful disclosure of all information relevant to the investigations described in paragraph one....

> Should it be determined by the United States Attorney's Office that Mr. Packwood has wilfully given materially incomplete or false testimony or false information, he shall be subject to prosecution for any appropriate federal criminal violation, including but not limited to perjury, and false statements....

Packwood's then counsel and the then prosecuting attorney involved in the negotiations differ as to whether they reached a parol agreement that any later prosecution would be limited to perjury or related

charges. It is unnecessary to resolve that disagreement.

Following the signing of the agreement, FBI agents reinterviewed Packwood. The government has provided only a summary of the discussion from which it appears that the agents asked only a general question about Packwood's activities on July 23, 1979. He responded with a narration of his activities beginning when he awoke at 10:00 A.M. While at least one statement from Donald Desbiens now indicates that the murder actually occurred in the early morning hours of the 23rd, the agents apparently failed to inquire further of the defendant concerning his activities earlier that day or ask a direct question about his involvement in the murder.

Later in 1980, the government received statements from *two* individuals linking Desbiens and Packwood with the murder, but declined to prosecute. Only following Desbiens's 1985 confession to the murder did the government indict him. Prior to Desbiens's trial, an FBI agent contacted Packwood to inform him of Desbiens's confession and to ask him if he had any statement. When Packwood apparently asked to consult with an attorney before answering, the FBI agent left and did not return.

DISCUSSION:

■ A plea agreement is a contract and contract principles govern its interpretation. *United States v. Kamer,* 781 F.2d 1380, 1386 (9th Cir.1986), *United States v. Arnett,* 628 F.2d 1162, 1164 (9th Cir.1979). However, because such agreements arise at a critical stage of the criminal justice process, constitutional concerns such as due process color the analysis of their terms and conditions. *United States v. Santobello,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); *United States v. Calabrese,* 645 F.2d 1379, 1390 (10th Cir.), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981).

■ Using the contract analysis, the government contends that it may abrogate this agreement because Packwood has materially breached its terms and thus ended the government's obligation of reciprocal performance. To succeed with this argument, the government must prevail on four issues:

(1) That the agreement by its terms was revocable upon breach by Packwood;

(2) That Packwood has breached the agreement;

(3) That, if he breached it, the breach was material; and

(4) That Packwood had notice and an opportunity to cure any breach.

■ A) *Revocability of Agreement.* The government may generally revoke a plea bargain when it has shown that a defendant has committed a "substantial breach" of its terms. *United States v. Simmons,* 537 F.2d 1260, 1261 (4th Cir. 1976); *United States v. Preslar,* 608 F.Supp. 986, 991 (N.D.N.Y. 1985). However, "(i)n cases where a court has voided a plea agreement because of a defendant's breach, the various agreements contained a catch-all clause stating, in essence, that if the defendant failed to fulfill all of his obligations under the agreement the Government would be free to reindict him." *United States v. Bielak,* 660 F.Supp. 818, 827 (N.D.Ind. 1987) (citing to *United States v. Wood,* 780 F.2d 929 (11th Cir.1986), *cert. denied,* 451 U.S. 1018, 107 S.Ct. 97, 93 L.Ed.2d 48 (1986); *United States v. Calabrese,* 645 F.2d 1379 (10th Cir.1981); *United States v. Stirling,* 571 F.2d 708 (2nd Cir.1978), *cert. denied* 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978); and *United States v. Verrusio,* 803 F.2d 885 (7th Cir. 1986)); *see also Ricketts v. Adamson,* —— U.S. ——, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987). Although such a statement is not necessarily required, its absence in a government-drafted plea agreement inevitably introduces an element of ambiguity.

■ General due process concerns for fairness and traditional contract principles of construing ambiguity against the drafter and the stronger bargaining party shift the risk of ambiguity to the government. *United States v. McBride,* 571 F.Supp. 596, 605 (S.D.Tex.1983); *United States v. Sanderson,* 498 F.Supp. 273, 277 (M.D.Fla.1980).

The agreement with Packwood provided only that if he gave materially incomplete or false testimony or false information he would be subject to "prosecution for any appropriate federal criminal violation including but not limited to perjury and false statements." It did not say that the agreement would be void if Packwood failed to perform or that it could be revoked. *Cf. Ricketts v. Adamson,* — U.S. —, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987).

The government argues that a prosecutor as able as the one who represented it in the plea negotiations would never enter into an agreement limiting the government to perjury or false statement charges in the event of a breach. The argument misses the point. The defendant's exposure in the event of a breach of the plea agreement is obviously a major concern of any defense counsel negotiating a plea. Whatever may pass between the attorneys in the course of those negotiations, the prosecutor knows that if he in the future asserts a breach of the plea agreement, an issue will immediately arise concerning the consequences of that breach. By failing to make explicit the full extent of the rights reserved by the government, an experienced prosecutor can expect defense counsel looking out for the defendant's interest to interpret silence or ambiguity in her client's favor. It is surely not defense counsel's burden in such negotiations to spell out the government's remedies in the event of a breach. The responsibility for failing to do that—and any resulting ambiguity—must be laid at the government's door.

■ B) *Breach of Agreement.* Assuming arguendo that the government reserved the right to withdraw the protections of the plea agreement in the event of a breach, the fact of Packwood's breach is not clearly established.

Packwood argues that he could breach the language of the agreement only by providing "false information," not by providing information which was incomplete or misleading. That construction, though perhaps technical, is open under the terms of the agreement. As has been noted, the government, which was represented by experienced counsel and drafted the document, was in the better position to avoid such ambiguities. It is therefore reasonable to hold it to "the literal terms of the agreement." *United States v. Travis,* 735 F.2d 1129, 1132 (9th Cir.1984) (quoting *United States v. Garcia,* 519 F.2d 1343, 1344–45 (9th Cir.1975)).

But even under the government's construction of the agreement, it is not clear that Packwood substantially breached the terms calling for his cooperation. His failure to begin his discussion of his activities on July 23rd with events which allegedly occurred early in the morning was arguably misleading. However, the government failed to follow up with direct questions about the murder or with other questions which might have disclosed the need for a fuller response and provided a firm basis for showing a refusal to cooperate. It failed to inquire about Packwood's activities at the original interview following the agreement, it failed to pursue the questioning following Desbiens's confession, and it failed to call him to the stand during Desbiens's trial.

The government bears the burden of proving any breach, *United States v. Calabrese,* 645 F.2d 1379, 1390 (10th Cir.1981), and must prove it by a preponderance of the evidence. *United States v. Verrusio,* 803 F.2d at 890–91. In light of the above facts, the government has failed to sustain that burden.

C) *Materiality of Any Breach.* Assuming arguendo that Packwood did breach the agreement by not responding more fully to the agents' questions, that breach would have to have been material to release the government from its obligations. *United States v. Simmons,* 537 F.2d 1260 (4th Cir.1976); *United States v. Nathan,* 476 F.2d 456, 459 (2nd Cir.), *cert. denied,* 414 U.S. 823, 94 S.Ct. 171, 38 L.Ed.2d 56 (1973).

Few courts have discussed what constitutes a "material" breach of a plea agreement. The Ninth Circuit has followed traditional contract principles in looking toward the reasonable expectations of the parties at the time of contracting to discover whether a given breach has deprived

them of the benefit of their bargain. *United States v. Kamer*, 781 F.2d at 1387–9; *United States v. Arnett*, 628 F.2d at 1164. In the present case, the government was seeking Packwood's plea of guilty to a bank robbery charge and his assistance in a possible trial of Desbiens. The government received the guilty plea, while the defendant relinquished his right to a jury trial, and served six years. The government also eventually obtained the conviction of Desbiens. Its assertions that Packwood's testimony might have accelerated or facilitated Desbiens's prosecution are both insubstantial and speculative.

The government has received the substance of the reasonably expected benefit of its bargain. Permitting the present prosecution, which the government agreed to forego as part of the original agreement, would give it a windfall, or, perhaps more accurately, would permit it to escape the embarrassing consequences of having overlooked its plea agreement when it proceeded to indict Packwood.

■ D) *Notice and an Opportunity to Cure.* Whether a breach occurred is a question of fact. Though the prosecuting attorney may assess the adequacy of a defendant's cooperation, only the court which approved the bargain can determine whether a breach occurred. *United States v. Simmons*, 537 F.2d 1260, 1261 (4th Cir. 1976). Before that determination is made, defendant is entitled to due process. *United States v. Calabrese*, 645 F.2d 1379, 1390 (10th Cir.1981).

■ Moreover, contract principles, when viewed in the light of the demands of due process, would seem to require that in a case such as this where the defendant does not know his inaction is being treated as a breach, the government give him timely notice and an opportunity to cure.

The need to give a breaching party notice of the breach and an adequate opportunity to cure it is basic to contract law. Section 241(d), *Restatement of Contracts (Second)*. At least one court has suggested that the government should give a defendant the opportunity to cure any breach before filing an indictment. *United States v. Verrusio*, 803 F.2d 885, 890 n. 3 (7th Cir.1986). Where the government is seeking to deprive the defendant of a liberty interest based upon a perceived breach of an ambiguous agreement, lack of notice or an opportunity to cure results in a fundamental denial of due process. The government's failure to question Packwood directly about his participation in the murder allowed him to believe that his answers had satisfied his obligation under the agreement. For five years, the government did nothing to lead him to believe that his rights under the agreement were in jeopardy. Even in 1985, when an FBI agent sought to interview Packwood following Desbiens's confession, the government did not pursue the inquiry and it never advised Packwood that his failure to provide information or testify could lead to a murder indictment. Once Desbiens was convicted, it was obviously too late for Packwood to cure any breach or to provide the government with assistance in the trial of Desbiens.

In view of the foregoing disposition, the Court does not reach the collateral issue of whether due process required an evidentiary hearing on the question of breach before indictment.

For the reasons stated, the defendant's motion to dismiss must be granted.

IT IS SO ORDERED.