FILED
United States Court of Appeals
Tenth Circuit

October 29, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 08-3303 |
| v. | (D. Kansas) |
| ZACHARY L.K. WILLIAMS, | (D.C. No. 06-CR-20047-CM-4) |
| Defendant - Appellant. | |
| _____ | |
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | Nos. 08-3292, 08-3293, 08-3308, 08-3351, 09-3174 |
| v. | (D. Kansas) |
| JOHNNIE K. WILLIAMS, III, | (D.C. No. 06-CR-20047-CM-1) |
| Defendant - Appellant. | |

ORDER AND JUDGMENT[*]

Before **HARTZ**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

Defendants and appellants, Zachary L. K. Williams and his brother,

Johnnie K. Williams III, appeal their convictions, following a jury trial, on

_____

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

numerous counts of conspiracy involving the distribution of crack cocaine.[1] We

affirm.

## BACKGROUND

We take the following recitation of the basic facts from this court's

decision involving Terry J. McIntyre, a co-defendant of the Williams brothers:

> In May 2005, the Lawrence Police Department obtained information
> from a confidential informant ("CI") regarding crack cocaine dealers
> in Lawrence, Kansas. The CI assisted the police in ten controlled
> purchases. Upon further investigation, the police identified McIntyre
> and his co-defendants [the Williams brothers] as belonging to a
> group of drug dealers known as the "Blue Crew.". . . On March 31,
> 2006, McIntyre was charged, along with four other defendants, in a
> seventeen-count indictment.

United States v. McIntyre, 2010 WL 2588175, at *1 (10th Cir. 2010).

Zachary Williams was charged with three counts: conspiracy to

manufacture, to possess with intent to distribute, and to distribute fifty grams or

more of a mixture and substance containing cocaine base (crack) within 1000 feet

of a public elementary school, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii)

and § 860(a), all in violation of 21 U.S.C. § 846; and two counts involving the

distribution of crack within 1,000 feet of an elementary school, in violation of 21

---

[1]The numerous appellate case numbers is due to the fact that Johnnie K.
Williams III filed three *pro se* notices of interlocutory appeal and his counsel
filed one notice of interlocutory appeal, all of which were abated. Counsel for
Johnnie Williams filed a notice of appeal after conviction and sentencing, at
which point the abatements were lifted and all five appeals were ultimately
consolidated. The brothers' appeals have been consolidated for disposition.

U.S.C. § 841(a)(1), (b)(1)(C), § 860(a) and 18 U.S.C. § 2.  Johnnie Williams was

charged with ten counts, including conspiracy to manufacture and distribute crack

cocaine within 1,000 feet of a public elementary school.[2]

The Williams brothers proceeded to trial with co-defendant Terry McIntyre.

The trial commenced on April 1, 2008.  As we recently explained in Mr.

McIntyre's appellate decision:

> On the sixth day of trial, April 10, 2008, McIntyre's counsel,
> Jacquelyn Rokusek, advised the court that she had withdrawn from
> representing Stephen Barbee in another case.  Rokusek had contacted
> the government approximately six weeks prior to trial to ask whether
> there was a conflict of interest arising out of her representation of
> both McIntyre and Barbee.  The government stated it was not aware
> of any conflict and Barbee apparently advised Rokusek he was not
> familiar with any of the individuals involved in this case.  Rokusek
> later learned both cases involved the same CI and Barbee's phone
> number appeared on phone records in this case, indicating that he
> may have purchased drugs from the Blue Crew.
>
> Rokusek informed the court she had contacted the Kansas
> Disciplinary Administrator's Office who advised her she had a
> conflict as to her representation of Barbee but not as to McIntyre. . . .
> The government was not satisfied McIntyre could waive the conflict
> and expressed concern that Rokusek might be a witness based on the
> apparently conflicting statements given to her by Barbee.  After
> further questioning by the court, Rokusek acknowledged McIntyre
> might not be able to waive the conflict of interest. . . .
>
> The court asked counsel to submit briefs regarding whether there was
> a basis for a mistrial as to McIntyre and, if so, how that would affect
> his co-defendants, the Williams brothers.  The court stated it was
> "leaning toward" finding a mistrial and asked counsel to state
> whether they believed there were any alternatives.  Rokusek

---

[2]The first indictment alleged five grams or more of cocaine.  The second
superseding indictment increased that quantity to fifty grams.

requested the court "order that the government is prohibited from calling Mr. Barbee as a witness in this case" so that "no conflict would exist." Counsel for the co-defendants and the government suggested three other alternatives: (1) obtaining a waiver of attorney/client privilege from Barbee; (2) severing McIntyre from the trial and proceeding against the Williams brothers; and (3) delaying the trial for 30-60 days to allow a new attorney to represent McIntyre.

On April 14, the court proposed its ruling and then asked the attorneys to state any objections on the record. It concluded Rokusek could not proceed as McIntyre's counsel because there was an actual conflict of interest regarding her representation of McIntyre and "a waiver could not cure the present problems because McIntyre "is unable to give a knowing waiver."

McIntyre, 2010 WL 25881755, at *2-3.

The court then considered the various alternatives counsel proposed and, ultimately, it rejected them all. It rejected the proposal to just ban Mr. Barbee from testifying because Mr. Barbee "may serve as a witness for the government or for defendants," and "[t]he court will not prohibit the other defendants from calling witnesses that may have potentially beneficial information." Tr. Transcript at 775, R. Vol. 2 at 804. Further, the court noted that banning Mr. Barbee from testifying did not solve the problem that "Miss Rokusek may have learned information related to the confidential informant through her representation of Mr. Barbee, and may therefore be unable to effectively cross-examine the confidential informant." Id. Zachary Williams' counsel argued that a ruling of a mistrial for Zachary was particularly prejudicial because he had

-4-

already given his opening statement, thereby revealing to the government his theory of his defense.

The court ultimately concluded that "there [were] no viable alternatives to remedy the problems created by Miss Rokusek's conflict" and it was therefore necessary to determine that "a mistrial for Terry McIntyre is a manifest necessity." Id. at 795-96, R. Vol. 2 at 824-25. It then declared mistrials for both Williams brothers and explained its final ruling as follows:

> First, the court finds that Miss Rokusek has an unwaivable conflict of interest. Miss Rokusek is unable to continue to represent defendant Terry McIntyre in this trial. . . . Without any viable alternatives, the court finds a mistrial for defendant Terry McIntyre necessary. Second, because defendant Terry McIntyre cannot proceed in the current trial, the court severs his trial from the remaining defendants. Third, the court finds that the resulting trial could also violate the rights of defendant Johnnie Williams and defendant Zachary Williams. Without any viable alternatives, the court finds that mistrials for defendants Johnnie Williams and Zachary Williams are necessary.

Id. WL 2588175, at *3.

The government then filed a third superseding indictment on April 24, 2008, which expanded the time period of the conspiracy and added nine additional counts against Johnnie Williams. Although Mr. McIntyre's case had been severed from the Williams brothers' cases, the district court granted the government's motion for joinder of the Williams brothers and Mr. McIntyre for trial.

On October 8, 2008, both Williams brothers filed a motion to dismiss the third superseding indictment on the ground of double jeopardy. The court denied

the motion and the case proceeded to a second trial. Zachary Williams was convicted on all charges. Johnnie Williams was convicted on sixteen counts, and acquitted on two counts. Because Johnnie makes an argument concerning the jury instructions and the special questions submitted to the jury, which we address, *infra*, we note that, in response to Special Question No. 1, the jury marked "YES" and marked "50 grams or more" in response to Special Question No. 2.[3]

---

[3]Special Question No. 1 stated:

If you have found the defendant guilty on Count 1, do you unanimously find that the government has proved, beyond a reasonable doubt, that the defendant conspired to manufacture, to possess with intent to distribute and to distribute a mixture and substance containing a detectable amount of cocaine base, "crack," a controlled substance, within 1,000 feet of the real property comprising Schwegler elementary School, a public elementary school?

YES____ NO____

Special Question No. 2 stated:

If you have found the defendant guilty on Count 1, do you unanimously find that the government has proved, beyond a reasonable doubt, that the overall scope of the conspiracy was to manufacture, to possess with intent to distribute or to distribute the following quantity of a mixture and substance containing a detectable amount of cocaine base, "crack"?

____ A detectable amount, but less than 5 grams

____ 5 grams or more, but less than 50 grams

____ 50 grams or more

Both men filed motions for a new trial, which were denied by the district court.

In preparation for sentencing, the United States Probation Office prepared a presentence report ("PSR") to assist the court in calculating an appropriate sentence under the advisory guidelines of United States Sentencing Commission, Guidelines Manual ("USSG"). The PSR calculated that the relevant drug quantity was between 500 grams and 1.5 kilograms of crack. That corresponded to a base offense level under the USSG of 34. That same drug quantity of powder cocaine, as opposed to crack, would yield a base offense level of 26.

After adjustments, Zachary's total offense level was 37, which, with a criminal history category of I, yielded an advisory sentencing range of 210 to 262 months' imprisonment. Johnnie's total offense level was 41. With his criminal history category of VI, his advisory guidelines sentence was life imprisonment.

At the sentencing hearing, the court noted that it was aware of, and sensitive to, the disparity between the treatment of powder cocaine and crack cocaine, but it concluded that a variance was not appropriate. The court then sentenced Zachary Williams to 210 months' imprisonment and Johnnie Williams to life imprisonment.

These appeals followed, in which both Williams brothers challenge the denial of their motions to dismiss on the grounds of double jeopardy. Additionally, Zachary Williams appeals the denial of his request for a variance in his sentence on the basis of the crack/powder cocaine sentencing disparity.

Johnnie Williams argues that the court erred in denying his motion for a new trial when errors in the jury instructions caused manifest injustice.

## DISCUSSION

### I. Denial of Motions to Dismiss

"When a mistrial has been declared, the Double Jeopardy Clause precludes a retrial of the defendant unless the defendant consented to the mistrial, or unless the mistrial was compelled by manifest necessity." United States v. Crotwell, 896 F.2d 437, 439 (10th Cir. 1990) (quotations, citation and footnote omitted). The district court in this case concluded that the mistrial was compelled by manifest necessity. We review the court's decision for an abuse of discretion. United States v. Powell, 982 F.2d 1422, 1429 (10th Cir. 1992).

"[T]he Supreme Court has refused to adopt a mechanistic formula for the presence of manifest necessity, and has repeatedly reiterated that trial judges must be accorded broad discretion to declare a mistrial." Walck v. Edmondson, 472 F.3d 1227, 1236 (10th Cir. 2007) (quotations and citations omitted). We consider many factors in determining whether the mistrial resulted from manifest necessity.[4] As we did in the appeal involving the Williams brothers' cousin and

---

[4]In Walck, we provided a non-exhaustive list of 12 factors that are relevant to the manifest necessity inquiry.

co-conspirator, Mr. McIntyre, we focus our discussion on the particular arguments the Williams brothers make.

They argue that a better solution to the attorney conflict problem in this case would have been to bar the new witness, Mr. Barbee, from testifying. They also suggest that a mistrial was inappropriate because the government was somehow complicit in creating the situation leading to the mistrial.[5]

As noted in Walck, we can consider "whether the possible prejudice or other legal complications created by the difficulty could be 'cured' by some alternative action that would preserve the fairness of the trial." Id. at 1236 n.5. We observed in McIntyre, "[e]ven if the court had prohibited Barbee from testifying, it would not have solved the problem regarding Rokusek's continued representation of McIntyre. The court concluded she had a conflict of interest that McIntyre could not waive because she could not tell him what she learned from Barbee." McIntyre, 2010 WL 2588175, at *4.

We recognize that Mr. McIntyre and the Williams brothers may not have had identical interests in considering whether manifest necessity required a mistrial, but we conclude that the district court did not abuse its discretion in selecting the solution it chose, and rejecting other alternatives. Indeed, the

[5]The court specifically found that "[none] of the parties or their counsel . . . acted in bad faith." Tr. of 10/14/2008 Hr'g at 52. Thus, we find that the court decided that government counsel did nothing improper concerning its awareness of the existence of a conflict involving Ms. Rokusek. Our court in McIntyre took the same view of the government's conduct at the relevant times in this case.

inquiry in this case is not whether the solution chosen by the district court is, in hindsight, the very "best" decision; rather, it is whether the district court abused its very broad discretion in determining that a mistrial was required based on a finding of manifest necessity, from the viewpoint of the district court at the time of its ruling.[6] Given the district court's familiarity with the parties and the case, given that the court sought out and considered many alternatives, and given its broad discretion over the matter, we conclude that the court did not abuse its discretion in declaring a mistrial for manifest necessity.[7]

_____

[6]At the time the court made its final ruling on the issue of a mistrial, the court noted the "unique factual circumstances that have taken place during the trial." Tr. Transcript at 795, R. Vol. 2 at 824.

[7]The district court cited several cases in support of its grant of a mistrial. We consider one in particular to be quite applicable to this case. In <u>United States v. Calabrese</u>, 645 F.2d 1379 (10th Cir. 1981), counsel for a co-defendant attempted to impeach a witness that the attorney had represented previously. The trial court found that this put the attorney in the position of being both a witness and an advocate. In affirming the district court's grant of a mistrial against the defendants' wishes, we stated:

> The record reveals that before declaring the mistrial the court considered a number of less drastic alternatives, including severing the trial of the defendant whose attorney had caused the impropriety, permitting him to obtain new counsel, and restricting the scope of cross-examination insofar as it related to disclosure of privileged communications. However, the court was not required to accept a solution which remedied only one of the problems or offered only temporary relief. A severance or substitution of counsel would not have removed the ethical issues raised in the jurors' minds or eliminate[d] the other defendant's interest in impeaching the witness . . .

(continued...)

-10-

## II. Variance in Sentence Based on Crack/Powder Cocaine Disparity

Zachary Williams argues the district court should have granted a downward variance based on the unfairness of the disparity in sentencing accorded to equal quantities of crack and powder cocaine.[8] At the time of his sentencing, the disparity in sentencing between crack cocaine and powder cocaine offenders was 100:1. In other words, for purposes of drug quantities for sentencing under the guidelines, one gram of crack triggered the same penalties as one hundred grams of powder cocaine. Zachary avers, "[h]ad the Court employed a 1:1 ratio of crack cocaine to powder cocaine, and providing for the other adjustments that the Court found, the defendant would have had a final offense level of 29, or in other words 87-108 months." Appellant's Br. at 28.

We review a criminal defendant's sentence for reasonableness, deferring to the district court under the "familiar abuse-of-discretion standard of review." Gall v. United States, 552 U.S. 38, 46 (2007). Reasonableness review has a

---

[7](...continued)
Id. at 1383. In McIntyre, we stated, "[l]ike the district court in Calabrese, the trial court here acted with the principal goal of protecting the interests of McIntyre and his co-defendants." 2010 WL 2588175, at \*6 (emphasis added). While we recognize that Mr. McIntyre was not in the precisely same situation as the Williams brothers, there was enough uncertainty about the possibility of Mr. Barbee and/or Ms Rokusek testifying in the Williams case that we find Calabrese helpful to our analysis of this case. We realize that hindsight may seem to provide a kind of clarity which did not exist at the time the district court made its ruling.

[8]Zachary Williams argued for a downward variance in his objections to the PSR, but the district court rejected them.

procedural and a substantive component. United States v. Alapizco-Valenzuela, 546 F.3d 1208, 1214 (10th Cir. 2008). "We may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed de novo. Instead, we must 'give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the [sentence imposed].'" United States v. Smart, 518 F.3d 800, 807-08 (10th Cir. 2008) (quoting Gall, 552 U.S. at 51)). A sentence imposed with the properly calculated advisory guideline range is entitled to a rebuttable presumption of reasonableness. Zachary appears to challenge only the substantive reasonableness of his sentence.

We have very recently issued a decision in a case in which the defendant raised the identical issue about varying downward from the crack cocaine guidelines, based upon the crack/powder disparity. United States v. Lewis, No. 09-3329, __ F.3d __ (2010). For the same reasons we rejected the defendant's argument in Lewis (that the district court erred in failing to vary downward from the 100:1 crack/powder sentencing disparity), we reject Zachary Williams' argument that the district court in this case erred in failing to depart downward from the advisory sentencing range calculated using the crack cocaine guidelines. Besides exercising its discretion to refuse to vary downward based on the crack/powder sentencing disparity, the court in this case properly considered the § 3553(a) sentencing factors and determined a reasonable sentence.

-12-

Accordingly, we affirm the 210-month sentence imposed on Zachary Williams in this case.

### III. Jury Instructions

Finally, Johnnie Williams argues that errors in the jury instructions created confusion in the jury and led to a manifestly unjust conviction. Thus, he argues the district court erred in failing to grant his motion for a new trial. We review a district court's refusal to grant a new trial for an abuse of discretion. See United States v. Mounkes, 204 F.3d 1024, 1028 (10th Cir. 2000). Further, "[w]e review a district court's decision to give a particular jury instruction for an abuse of discretion and consider the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law." United States v. Gwarthney, 465 F.3d 1133, 1142 (10th Cir. 2006). Because Johnnie failed to object to the instructions at the time, we review them de novo for plain error. United States v. Marshall, 307 F.3d 1267, 1270 (10th Cir. 2002).

Johnnie Williams' argument is that Count 1 of the indictment, as set forth in jury instruction nos. 15, 21 and 23, charged a conspiracy to manufacture, possess with intent to distribute, or distribute fifty grams or more of crack cocaine within 1,000 feet of a public elementary school. He claims the use of the words "within 1,000 feet of . . . a public elementary school," and "fifty grams or more" were not elements of the crime charged in Count 1, but were merely relevant to

the issue of appropriate penalties.  Their "emphasis" in the instructions, he argues, "impermissibly coerced and misled the jury, and had an unfairly prejudicial effect on the defendant."  Johnnie Williams' Br. at 23.  Rather, those two penalty-related questions should have been exclusively addressed in the two Special Questions (which they were, see note 3, supra).

Viewing the instructions as a whole, we do not conclude that the jury was misled or coerced in any way.  The Special Questions explicitly asked whether the government had proven the factual issues as to proximity to a school and quantity beyond a reasonable doubt.  Further, the jury instruction enumerating the elements of the drug offense (Instruction 21) properly stated the elements of the drug offense and did not include proximity and quantity as elements.[9]  Thus, the jury simply determined as a factual matter that drug activity relating to a particular quantity of drugs occurred at a particular place, within 1,000 feet of a school, in response to the Special Questions.  We see no plain error in the instructions.  The district court did not abuse its discretion in denying Johnnie Williams' motion for a new trial on the ground that the instructions were plainly erroneous.

---

[9]The instruction enumerating the elements of the drug offense (Instruction 21) exactly follows the Tenth Circuit pattern instruction.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the district court's denial of both Williams brothers' motions for a new trial and their motions to dismiss the indictment on double jeopardy grounds, and we AFFIRM Zachary Williams' sentence.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge