**UNITED STATES of America, Plaintiff,**

v.

**John DOE, Defendant.**

United States District Court,
E.D. New York.

Oct. 22, 1987.

Andrew J. Maloney, U.S. Atty., Brooklyn, N.Y. (John Gleeson, Asst. U.S. Atty., of counsel), Timothy J. White, student intern, for plaintiff.

Roger J. Schwarz, New York City, for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Defendant John Doe moves to suppress statements made to FBI Special Agent Robert Joyce on April 21, 1987 on the following grounds: (1) that although Doe signed a cooperation agreement with the Government on April 16, 1987, it is unenforceable because it is contrary to Rule 410 of the Federal Rules of Evidence, Rule 11(e)(6)(D) of the Federal Rules of Criminal Procedure and public policy; (2) that, even if it is enforceable, the statements made by Doe are precluded by the express terms of the cooperation agreement; (3) that the statements were involuntary; and (4) that the statements were made in violation of Doe's fifth and sixth amendment rights.

A hearing on these issues was conducted and the following findings of facts and conclusions of law were made.

After considering all the relevant competent evidence, the following findings are supported by a preponderance of the evidence.

### Findings of Fact

John Doe was arrested in Brooklyn on April 2, 1987 and charged with knowingly transporting in interstate commerce a motor vehicle he knew was stolen in violation of 18 U.S.C. § 2312 (1982).

After being temporarily detained, Doe was brought to the courthouse for a detention hearing the next day. The hearing was adjourned, but Doe, through his attorney Roger Schwarz, indicated his willingness to cooperate with the government. A proffer agreement was reached shortly thereafter on April 3, between Doe, Schwarz and Assistant U.S. Attorney John Gleeson. Doe made several statements that day pursuant to the proffer agreement, none of which are the subject of this motion.

On April 16, 1987 a cooperation agreement was executed by Doe, Schwarz and Gleeson, in the presence of FBI Special Agent Joyce.[1] The terms of the cooperation agreement provided that Doe would be

1. The agreement provided in pertinent part:
   1. [John Doe] agrees to be fully debriefed concerning his knowledge of and participation in thefts and transportation of motor vehicles, the sale of such vehicles and parts thereof, and any other criminal activity he is asked about. This debriefing will be conducted by this office, agents of the FBI and other law enforcement agencies, as this office may require. All documents which are relevant to the investigation and in Mr. [Doe's] possession or under his control will be furnished to this office. All information provided by Mr. [Doe] shall be truthful, complete and accurate.
   2. [John Doe] agrees to testify as a witness before a Grand Jury in this district or elsewhere, as may be requested, and at any trials, either in this district or elsewhere, as this office may require. Specifically, he agrees to testify, as this office may require, at the trial or trials of [his co-defendants].
   3. [John Doe] agrees to cooperate with agents of the FBI or other law enforcement agencies, as this office may require, in investigations arising from information provided by him. This cooperation includes, but is not limited to, undercover introductions.
   4. [John Doe] agrees not to engage in any criminal activity during the course of this agreement. He further agrees that should he be arrested or otherwise charged with a criminal offense, he will promptly notify the Office of the United States Attorney for the Eastern District of New York.
   
   In exchange for the cooperation of [John Doe], as set out above, this office agrees to the following:
   1. This office will permit him to plead guilty to one count of conspiracy to violate 18 U.S.C. § 2312. Such plea of gulity [sic], if accepted by the court, will cover Mr. [Doe's] heretofore disclosed participation in the criminal activity set forth in the complaint filed herein on April 2, 1987. Mr. [Doe] agrees that this plea of guilty will be taken under oath pursuant to Rule 11(c)(5), Fed.R.Crim.P. Furthermore, no information so disclosed by Mr. [Doe] during the course of his cooperation will be used against him, except as provided below. The government will move to dismiss any other charges against Mr. [Doe] at the time of sentencing.
   2. This office, prior to the sentencing of [John Doe], will advise the sentencing court of the nature and extent of his cooperation, including its investigative and prosecutive value, truthfulness, completeness and accuracy. In this connection, it is understood that this office's determination of the value, truthfulness, completeness and accuracy of this cooperation shall be binding upon the defendant and its statement to the sentencing court may be made either orally or in writing. This office will also advise the sentencing court of [John Doe's] role in the criminal activity for which he was arrested and the relative culpability of [John Doe] and the other participants in that activity. However, this office will make no specific recommendations with respect to sentencing. This office makes no representations to [John Doe] concerning any sentence that may be imposed upon the aforementioned plea of guilty, such matters being solely within the province of the sentencing court.
   3. This agreement is limited to the United States Attorney's Office for the Eastern District of New York and cannot bind other federal, state or local prosecuting authorities.
   
   It is further understood that [John Doe] must at all times give complete, truthful and accurate information and testimony. Should it be judged by this office that he has intentionally given false, misleading or incomplete information or testimony or has otherwise violated any provision of this agreement, this agreement may be deemed null and void by this office and [John Doe] shall thereafter be subject to prosecution for any federal criminal violation of which this office has knowledge, including but not limited to perjury and obstruction of justice.

debriefed concerning the criminal activity, testify before a Grand Jury, cooperate with law enforcement officials and refrain from engaging in any criminal activity during the course of the agreement. In exchange for this, the government agreed to permit Doe to plead guilty to one count of conspiracy to violate § 2312, move to dismiss any other charges pending against Doe at the time of sentencing, advise the sentencing court of the nature and extent of Doe's cooperation, and with various conditions, refrain from using information disclosed by Doe during the course of his cooperation.

As set forth in the April 16th agreement, the non-use of Doe's statements was conditioned on Doe's proffer of "complete, truthful and accurate information and testimony." The agreement further provided that it would be deemed null and void, and Doe subject to prosecution for any criminal violation if Doe gave false, misleading or incomplete information and testimony or otherwise violated the terms of the agreement. In addition, the agreement stated: "[a]ny such prosecution may be premised upon any information provided by Mr. [Doe] during the course of cooperation and such information may be used against him."

After the agreement was signed on April 16, 1987, Doe agreed to meet with Agent Joyce the following day. Mr. Schwarz was present at the time and stated that he did not wish to be present at the debriefing.

Although Doe appeared for his April 17th debriefing, no fruitful discussions took place because Doe arrived at the meeting with his brother, a co-defendant, who was unaware that Doe was cooperating. In an effort to maintain confidentiality, the session was aborted and rescheduled for April 20th.

Doe failed to appear at the FBI offices on April 20th. After discussions between Gleeson and Schwarz about locating Doe, they agreed to contact him through Pre-trial Services, to whom Doe was reporting daily.

On April 21st, Gleeson and Schwarz spoke again. Schwarz and Gleeson agreed that they should attempt to locate Doe at Pre-trial Services and find out what the problem was.

Agent Joyce was dispatched to Pre-trial Services on Livingston Street and found Doe in the lobby. They walked to the area where the elevator banks are located and Agent Joyce asked Doe why he did not appear at the April 20th debriefing meeting. Agent Joyce did not prevent Doe from leaving Pre-trial Services or tell Doe that he was not free to leave.

The following statements then were made by Doe to Agent Joyce and are the subject of this suppression hearing: Doe had had some second thoughts about cooperating with the government. He felt that he would lose his reputation "on the street" and impair his ability to get a job if he cooperated. He said that the agents had caught him in the stolen truck but had nothing on his brother. Doe stated that he drove his brother to New Jersey in a red four-door Chrysler belonging to his employer. Doe stated that the car was registered to a friend who owned a grocery store in Brooklyn. Doe stated that he knew that the purpose of the trip to New Jersey was to steal a truck. His brother provided the directions. Doe got lost on his way back from New Jersey to Brooklyn. Doe stated that he would take his plea and do his time rather than ruin his reputation by cooperating. He also stated that he had been warned not to "run off at the mouth." Significantly, Doe did not at this time, indicate that he was repudiating his plea agreement; nor did Agent Joyce understand that repudiation was Doe's intention. In Agent Joyce's experience it is not at all uncommon for cooperating witnesses to soften their resolve to cooperate as time elapses.

Sometime later that day, it became apparent to all concerned that Doe was no longer willing to cooperate with the government. Because the agreement was violated, the government intends to intro-

---

Any such prosecution may be premised upon any information provided by [Mr. Doe] during the course of cooperation and such information may be used against him. Also, any previously entered plea of guilty will stand.

duce these statements into evidence at trial.

### Conclusions of Law

Doe contends that the April 16th agreement is contrary to Rule 410 of the Federal Rules of Evidence, Rule 11(e)(6) of the Federal Rules of Criminal Procedure and public policy. I disagree.

Rules 410 and 11(e)(6)[2] apply to statements made during the "free and open discussion[s] between the prosecution and the defense during attempts to reach a compromise." *United States v. Davis*, 617 F.2d 677, 683 (D.C.Cir.1979). In other words, these rules apply and privilege all statements made during the twilight period during which discussions are being had with a view toward a plea agreement. Once the agreement is reached, the rules are supplanted and the terms of the plea agreement become operative. Such a compromise was reached between the parties here on April 16th and embodied in the April 16th agreement. The statements made on April 21st that Doe now seeks to suppress, and any discussions that were to occur after April 16th fall outside the protections afforded by Rules 410 and 11(e)(6) because they post-date the agreement.[3] *See id.* at 685; *United States v. Stirling*, 571 F.2d 708, 731 (2d Cir.), *cert. denied*, 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978). "Excluding [statements] made af-

ter—and pursuant to—the agreement would not serve the purpose of encouraging compromise," *Davis, supra*, at 685, and thus would not further the purpose of Rules 410 and 11(e).

Any immunity possessed by Doe when he made the statements is conferred by the April 16th agreement. Doe forfeited that protection when he refused to continue to cooperate. *See Stirling, supra*, at 732. It then became the government's perogative, as set forth in the agreement, to use the April 21st statements in an action against Doe, which was not limited to perjury or making a false statement. *See United States v. Castelbuono*, 643 F.Supp. 965, 969 (E.D.N.Y.1986) ("When a defendant acquires immunity via an agreement, as here, the remedies of the parties are governed by that agreement.... It is clear from the terms of the agreement that a breach by [the defendant] would result in a loss of immunity for previous statements, there is no indication of an intention to limit the government's remedy in case of breach to a prosecution for perjury or false statement."). Indeed, without these remedies for the government, "it would be reluctant to enter into a cooperation agreement and a useful investigative tool would be lost." *Id.* at 970. For these reasons I find the agreement neither contrary to Rules 410 and 11(e)(6) nor public policy.

---

**2.** Rule 11(e)(6), which for all relevant purposes is identical to Rule 410, provides:

> Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
> (A) a plea of guilty which was later withdrawn;
> (B) a plea of nolo contendere;
> (C) any statement made in the course of any proceedings under this rule regarding either of the foregoing pleas; or
> (D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.
> However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contem-

poraneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

Fed.R.Crim.P. 11(e)(6).

**3.** Although Rule 11(e)(6) requires that the statement be made "in the course of plea discussions with *an attorney* for the government" (emphasis added), the Second Circuit has construed this provision to require "the *participation* of a government attorney in the plea discussions, but not necessarily his physical *presence* when a particular statement is made to [authorized] agents." *United States v. Serna*, 799 F.2d 842, 849 (2d Cir.1986) (emphasis supplied). Thus, the fact that Gleeson was absent when the statements were made to Agent Joyce is of no consequence, since Agent Joyce clearly was authorized by Gleeson to debrief Doe.

■ Doe also maintains that his statements are precluded by the express terms of the April 16th agreement. His argument focuses on the sentence: "Any such prosecution may be premised upon any information provided by [Doe] during the course of cooperation and such information may be used against him." Doe contends that because he expressed reservations about continuing to cooperate at the April 21st meeting with Agent Joyce, the statement was not made "during the course of cooperation" and therefore should be suppressed. Based on the evidence presented, I find that Doe was not repudiating the April 16th agreement at the time he spoke with Agent Joyce, but rather was merely expressing his reservations. Because I find that Doe did not expressly repudiate the April 16th agreement until sometime after he made the statements, I find that the statement was made "during the course of cooperation" and therefore subject to the terms of the agreement.

■ Doe also contends that his statements were involuntary. Whether a statement was made voluntarily must be determined on a case-by-case basis with an examination of the surrounding circumstances. *See Davis, supra,* at 686–87; *see also Haynes v. Washington,* 373 U.S. 503, 513–14, 83 S.Ct. 1336, 1342–43, 10 L.Ed.2d 513 (1963) ("whether the [statement] was obtained by coercion or improper inducement can be determined only by an examination of all the attendant circumstances"). Having exercised such discretion and judgment, I find that Doe made the statements to Agent Joyce voluntarily. I base this conclusion on the following facts: he volunteered his cooperation shortly after his arrest; he freely negotiated and entered into the April 16th agreement with the advice and assistance of counsel; he agreed to meet Agent Joyce for debriefing on April 17th and April 20th; and he chose to remain with Agent Joyce at Pre-trial Services on April 21st despite his freedom to leave or his ability to refuse to answer the agent's questions. That the government made promises as a bargained-for exchange for Doe's cooperation does not

render his statements involuntary. *See Davis, supra,* at 686–87.

■ Doe's next argument is that the statements should be suppressed as made in violation of his rights under the fifth amendment. I find that there was no violation of his fifth amendment rights because, at the time the statements were made to Agent Joyce, Doe was not in custody. Doe, at all times, was free to leave Pre-trial Services. There simply was nothing that prevented Doe from walking away. It cannot fairly be said that the atmosphere was in any way coercive or "compelling." *See Miranda v. Arizona,* 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966).

Finally, Doe's last argument is that the statements should be suppressed because they were obtained in violation of his sixth amendment right to effective assistance to counsel. Doe bases his argument on the undisputed facts that he made the statements in the absence of counsel and in response to questions posed by Agent Joyce, after he was charged.

■ The sixth amendment right to effective assistance of counsel is violated when the government "obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a [government] agent." *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985). Under the facts of this case, it cannot be said that the FBI impermissibly interfered with Doe's right to the assistance of his counsel. *See United States v. Henry,* 447 U.S. 264, 275, 100 S.Ct. 2183, 2189, 65 L.Ed.2d 115 (1980). On the contrary, the government was seeking to abide by the terms of the April 16th agreement, which was negotiated by Doe with the assistance of his counsel. Moreover, counsel consented to and facilitated the encounters between Doe and Agent Joyce, well aware that the meetings were to occur in his absence. Doe had several opportunities to seek his counsel's assistance or request his presence at these meetings. He did not.

In sum, I find that the defendant Doe was not denied the opportunity to consult

**210**

with counsel in violation of the sixth amendment.

Based on the foregoing, the defendant's motion to suppress is hereby denied.