UNITED STATES of America

v.

Sean Christian TARRANT, Jon Lance Jordan, Christopher Barry Greer, Michael Lewis Lawrence, Daniel Alvis Wood.

Crim. A. No. 3–89–293–H.

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 16, 1990.

See also, 732 F.Supp. 56.

James P. Turner, Acting Asst. Atty. Gen., Civ. Rights Div., U.S. Dept. of Justice, Barry Kowalski & Suzanne Drouet, Attys., Crim. Section, Washington, D.C., for U.S.

Craig Jett, Dallas, Tex., for defendant Wood.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court is Defendant Wood's Motion to Dismiss Indictment or To Suppress Statements of Defendant, filed December 15, 1989; and the Government's Response, filed January 2, 1990. Defendant Wood moves the Court to dismiss the indictment against him or in the alternative to exclude from evidence (1) certain statements made by him to law enforcement authorities and (2) any evidence derived therefrom.

## I. FACTS

Following his conviction for criminal mischief in state court, Defendant Wood was sentenced to imprisonment for ten years. Soon thereafter, Wood and his attorney met with representatives of both the federal and state government. After some discussion, the parties reached a deal whereby Wood agreed to cooperate with the federal and state authorities in their investigation of racist criminal activity in the Dallas area in exchange for (1) a promise that Wood would not be prosecuted further and (2) a grant of protection for Wood and his family. The parties memorialized the agreement in a three-page, single-spaced letter which included handwritten modifications and a typed addendum (hereinafter the "Proffer Agreement" or "non-prosecution agreement").

Section TWO of the Proffer Agreement clearly states that Wood could be prosecuted for perjury, false statement, or obstruction of justice in the event he gave false, misleading, or incomplete information. Section THREE specifically informed the Defendant that failure to perform *any* of his obligations under the agreement would release the government to prosecute him for any crime and permit the government to use evidence against him from any source, "including [his] own admissions." [1] In an addendum to the agreement, it is reemphasized that Wood would not be prosecuted "except as set forth in TWO and THREE."

After signing the Proffer Agreement on February 16, 1989,[2] Defendant spent several days providing information to the government. Several weeks later, how-

---

1. The agreement states:

 TWO: You will at all times give complete, truthful and accurate information and testimony and must not commit any further violation of state or federal law whatsoever. Nothing in this agreement shall be construed to protect you in any way from prosecution or perjury, false statement or false declaration, in violation of 18 U.S.C. §§ 1001, 1621, or 1623, or obstruction of justice, in violation of 18 U.S.C. §§ 1503, 1505, and 1510 in the event it is determined that you have intentionally given false, misleading or incomplete information. Nor does this agreement protect you from criminal prosecution for any other criminal offense committed by you after the date of this agreement or any criminal offense committed by you which resulted in the serious bodily injury or death of another.

 THREE: It is also understood that, if it is determined that you have intentionally given false, misleading or incomplete information or violated any other term of this agreement, then:

 (1) You will be subject to prosecution for any criminal violations of which the United States or the State of Texas may have knowledge from any source whatsoever, including your own admissions; and

 (2) All statements made by you to the United States and/or any other law enforcement officials, and all testimony given by you, and all leads from such statements or testimony, will be admissible in evidence against you. It is the intent of this agreement that you waive any and all rights which you may have under the United States Constitution, any statute or any Federal rule to seek suppression of these statements in the event that you violate any of the terms of this agreement.

2. The Court finds that Defendant voluntarily and knowingly entered into this agreement, having discussed it with his own counsel, having negotiated modifications to the agreement, and having counsel present at the time of execution. *See* Defendant's Motion at 2, 8; Government's Response at 3, 9–10.

ever, Wood decided that he no longer wished to cooperate and attempted to avoid giving any further information to law enforcement authorities.[3] Sometime after his release from incarceration, Wood left Texas to avoid giving testimony before a federal grand jury to which he had been subpoenaed to testify.[4]

Wood moves the Court to dismiss the present indictment against him in the belief that the government impermissibly used the statements he provided under the Proffer Agreement as evidence to support his indictment. Alternatively, the Defendant moves to suppress any statements, oral or written, that he made to law enforcement officials pursuant to the agreement and any evidence derived therefrom. The government responds asserting that the agreement permits the use of Wood's statements and urging the Court to deny Defendant's motion in total.

## II. DISCUSSION

### A. *Breach of the Proffer Agreement.*

■■■ Pretrial agreements, like plea bargains, are contractual in nature. *United States v. Fulbright*, 804 F.2d 847, 852 (5th Cir.1986). Although principles of contract law generally apply to such agreements, the constitutional ramifications of these agreements require judicial supervision in order to safeguard a defendant's rights. *United States v. Calabrese*, 645 F.2d 1379, 1390 (10th Cir.1981), *cert. denied*, 454 U.S. 831, 102 S.Ct. 127, 70 L.Ed.2d 108 (1982). When the government believes that a defendant has breached the terms of a proffer agreement and then wishes to rescind its part of the bargain, the government may not make this determination unilaterally. Instead, the government must prove to the court by a preponderance of the evidence that the defendant materially breached the agreement. *United States v. Packwood*, 848 F.2d 1009, 1011 (9th Cir. 1988); *United States v. Verrusio*, 803 F.2d 885, 891 (7th Cir.1986).[5] Where the facts are not in dispute, the court may determine breach as a matter of law. *Calabrese, supra*, 645 F.2d at 1390.

■■■ It is uncontroverted that the Defendant breached the agreement by a failure to meet his obligations required thereunder. Although Wood characterizes his actions as an "inarticulate way of withdrawing from an agreement about which he had regrets," this phraseology does not conceal the fact that Defendant does not actually contest the government's evidence of breach (*e.g.*, failure to cooperate by meeting with government representatives, failure to appear before grand jury). Indeed,

---

**3.** *See* Affidavit of Special Agent Robert Blecksmith, attachment B to the Government's Response. Among other things, Wood:

(1) failed on more than one occasion to meet a police detective, as promised, to accept service of a grand jury subpoena (Blecksmith Aff. ¶¶ 3, 4);

(2) failed to meet government attorneys, as promised, on the day prior to his scheduled grand jury appearance (Blecksmith Aff. ¶¶ 5, 6);

(3) failed to appear for his scheduled grand jury appearance on May 3, 1989 (Blecksmith Aff. ¶ 7);

(4) attempted to avoid service of a further subpoena on May 16, 1989 (Blecksmith Aff. ¶ 9);

(5) failed to appear for the rescheduled grand jury appearance on May 25, 1989 (Blecksmith Aff. ¶ 11);

(6) was convicted of violating 18 U.S.C. § 1074, unlawful flight to avoid prosecution, for leaving Texas; in the factual resume accompanying his plea of guilty, which plea Defendant made before this very Court, De-

fendant specifically admitted leaving Texas to avoid testifying before the federal Grand Jury. *See* Factual Resume filed September 7, 1989 in *United States v. Wood*, CR3 89–211–H.

**4.** *See supra* n. 3.

**5.** Courts are not unanimous about the precise level of the government's burden of persuasion on the issue of breach. *See, e.g., United States v. Gonzalez-Sanchez*, 825 F.2d 572, 578 (1st Cir.), (burden of proof by "adequate evidence"), *cert. denied*, 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987); *United States v. Skalsky*, 616 F.Supp. 676, 681 (D.N.J.1985) (proof by clear and convincing evidence), *aff'd*, 857 F.2d 172 (3d Cir. 1988). However, this Court is in agreement with the Seventh and Ninth Circuits that adequate protection for a defendant's rights is provided for by the preponderance standard, since the government must still establish beyond a reasonable doubt that the defendant did in fact commit the offense so charged. *See Packwood, supra*, 848 F.2d at 1109; *Verrusio, supra*, 803 F.2d at 890–91.

the Defendant has admitted to perhaps the most egregious asserted breach—that he fled Texas to avoid testifying, an admission of which the Court takes judicial notice. *See supra* n. 3. Because Wood refused to cooperate by failing to meet with government representatives, failing to testify before the grand jury, and eventually fleeing the jurisdiction to avoid cooperation altogether, the Court holds as matter of law that Wood has substantially and materially breached the Proffer Agreement. *See United States v. Donahey*, 529 F.2d 831, 832 (5th Cir.) (per curiam) (defendant breached cooperation agreement by giving evasive and misleading answers and refusing to answer certain questions), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976); *United States v. Reardon*, 787 F.2d 512, 516 (10th Cir.1986) (defendant breached agreement by failing to provide full accounting of his own activities); *United States v. Irvine*, 756 F.2d 708, 710–11 (9th Cir.1985) (defendant breached cooperation agreement by soliciting bribe even though agreement only required defendant to be truthful; defendant's acts subverted "overriding purpose" of agreement).

B. *The Government's Remedy.*

 Plea and non-prosecution agreements must be interpreted according to objective standards. *Johnson v. Beto*, 466 F.2d 478, 480 (5th Cir.1972) (per curiam). Where a non-prosecution agreement confers immunity for a defendant, the parties must look to and are governed by the agreement for their remedies arising from a breach. *United States v. Castelbuono*, 643 F.Supp. 965, 969 (E.D.N.Y.1986). Thus, where a cooperation agreement so provides, the government may use the defendant's statements against him in the event of a defendant's breach. *Irvine, supra*, 756 F.2d at 712; *United States v. Doe*, 671 F.Supp. 205, 208 (E.D.N.Y.1987); *Castelbuono*, 643 F.Supp. at 969; *United States v. Skalsky*, 616 F.Supp. 676, 680

(D.N.J.1985), *aff'd*, 857 F.2d 172 (3d Cir. 1988).

 Wood argues that the government has adequate remedies other than using his statements to prosecute him, and that use of his statements would allow the government to have the benefit of the bargain while depriving Wood of the same. Specifically, the Defendant contends that the appropriate remedy is to hold him in contempt for failure to testify before the grand jury under a grant of immunity, as would be the case had the Defendant been granted "statutory immunity" pursuant to 18 U.S.C. §§ 6002–6003.

18 U.S.C. §§ 6002 and 6003 set forth a procedure whereby, upon request of the United States Attorney, a court may order the testimony of an individual who asserts his or her fifth amendment privilege. However, the statute provides that no testimony or other information compelled under the order, or any information directly or indirectly derived therefrom, may be used against the individual in any criminal case, with this exception: where a defendant, granted statutory immunity, testifies untruthfully or refuses to testify the statute limits the government's remedy to a prosecution for perjury or contempt. The reason for this is clear: since the witness is compelled to testify over his or her fifth amendment privilege, the statute is constitutional "only if the immunity granted is equal to the constitutional protection it supplants." *Irvine*, 756 F.2d at 712.

Unlike statements given by a defendant pursuant to statutory immunity, however, those given by Wood under the Proffer Agreement were made *voluntarily* in exchange for a promise of nonprosecution. Wood's fifth amendment rights are not implicated in this situation.[6] As the government points out, it was only willing to take Mr. Wood's statements and promise not to prosecute him under the conditions that the statements were made voluntarily and that Wood acknowledged that a breach of the

---

**6.** *See Irvine,* 756 F.2d at 712:
[The defendant] testified pursuant to an agreement entered into freely on his own initiative and for his own purposes. [He] was

free to agree to conditions that could not have been imposed upon him had he chosen to claim his Fifth Amendment privilege.

agreement's terms would result in a waiver of any rights to suppress the statements. The government was at all times prepared to give the Defendant the benefit of the bargain and continued to make attempts to get him to fulfill the agreement.[7]

Thus, Defendant's complaint that the government is "having its cake and eating it too" is specious. As the Court stated in *Irvine*, "[t]here is no issue of compelled self-incrimination in this case. [The defendant] was not required to testify." *Irvine*, 756 F.2d at 712. He did testify, freely and voluntarily, and his failure to continue testifying before the grand jury and his ultimate refusal to cooperate should not limit the government's remedies to those provided for in a grant of statutory immunity.[8]

Instead, the remedial provisions contained in the Proffer Agreement govern the consequences resulting from Wood's breach, and they should be given effect.[9] As one court noted, proffer agreements "cannot be unilaterally broken with impunity or without consequence." *Reardon, supra*, 787 F.2d at 516 (citing *Calabrese*, 645 F.2d at 1390). Having failed to perform his obligations, the Proffer Agreement pro-

vides that the Defendant is no longer entitled to the government's promise of nonprosecution or the promise that his statements would not be used against him.[10] *See Castelbuono*, 643 F.Supp. at 969. Thus, the Defendant's indictment was wholly proper even if it was issued as a result of statements he made under the agreement and his request that these statements be suppressed must be denied.[11]

### C. *Fed.R.Crim.P. 11(e)(6).*

■ Federal Rule of Criminal Procedure 11(e)(6) offers no help to the Defendant. This rule prohibits admission of "any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn." Rule 11(e)(6), however, applies only to those statements leading up to the agreement and not those made subsequent to it. *United States v. Stirling*, 571 F.2d 708, 731–32 (2d Cir.) (purpose of the rule is to facilitate free and fearless negotiations to encourage pleas; policy not served by ruling inadmissible testimony given after

---

7. *See supra* n. 3.

8. Furthermore, should the government be deprived of using Wood's statements, then Wood and other defendants might attempt to manipulate investigations and prosecutions without fear of any consequences. As the *Castelbuono* court noted, this would

> result in a bad public policy.... If this Court held that the Government was limited to a prosection for perjury or false statement in those cases where defendants in bad faith did not fully comply with their obligations, the Government would be reluctant ever to enter into a cooperation agreement and a useful investigative tool would be lost. Defendants facing the possibility of extensive criminal charges would be eager to enter into cooperation agreements knowing that if they were poorly drafted ... and did not specify with particularity the consequences related to every possible breach, it might be possible in bad faith not to comply with the demands of the agreement and still limit one's exposure to a charge of perjury. *Also, a defendant could make no false statement at all, simply refuse to cooperate or cooperate in a very limited way, thereby selectively immunizing himself and face little, if any, penalty. The Court will not encourage such absurd results.*

*Castelbuono*, 643 F.Supp. at 969–70 (emphasis added).

9. *See supra* p. 33.

10. *See supra* n. 2.

11. Defendant's reliance on *United States v. Brown*, 801 F.2d 352 (8th Cir.1986), is misplaced. In *Brown*, the Eighth Circuit determined that the defendant had breached a cooperation agreement, thus permitting the government to prosecute him for the criminal conduct forming the basis of the agreement. The court also ruled that the government could not use any information, directly or indirectly, that was obtained under the plea agreement including the defendant's admissions. Although the court did not explicitly say so, this result was dictated by the fact that the agreement specifically prohibited the use of these statements except in a prosecution for perjury or false statement. *Id.* at 353. Again, *the remedies available upon the occurrence of a breach were prescribed by the agreement itself;* like Sections TWO and THREE of Wood's proffer agreement, the "non-use" provision in the *Brown* case was a post-breach remedial provision but in that case limited the government's remedies.

agreement reached), *cert. denied,* 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978); *see also United States v. Davis,* 617 F.2d 677, 685 (D.C.Cir.1979) (ruling post-agreement statements inadmissible would permit defendant to "renounce the agreement and return to the status quo ante whenever he chose, even though the Government has no parallel power to rescind the compromise unilaterally"; holding that drafters of Rule 11(e)(6) could not have contemplated such a result).

Since the Defendant and the government attorneys negotiated, modified, and signed the Proffer Agreement prior to Wood's making of the statements and notes sought to be suppressed, these statements were not made in the course of plea discussions. Consequently, *Fed.R.Crim.P.* 11(e)(6) does not protect them from evidentiary use.

## III. CONCLUSION

For the reasons stated above, no hearing is necessary to resolve Defendant Wood's Motion to Dismiss Indictment or to Suppress Statements. The undisputed facts and arguments before the Court dictate that Defendant's Motion be, and it is hereby, DENIED.

SO ORDERED.