**UNITED STATES of America, Plaintiff,**

v.

**Joseph A. MACCHIA, etc.,
et al., Defendants.**

**No. CR 92–1147(S–1).**

United States District Court,
E.D. New York.

Aug. 24, 1994.

184

Stephen Huggard, U.S. Dept. of Justice, Northern Criminal Enforcement Section, Washington, DC, for plaintiff.

Howard D. Stave, Forest Hills, NY, for defendant Joseph A. Macchia.

Ephraim Savitt, New York City, for defendant Balagula.

Lefcourt & Dratel, P.C. by Gerald B. Lefcourt, New York City, for defendant Lawrence Macchia.

Newman & Schwartz by Robert Hill Schwartz, New York City, for defendant George Macchia.

Paul B. Bergman, New York City, for defendant Varzar.

Dilworth, Paxson, Kalish & Kaufman by J. Shane Creamer, Philadelphia, PA, for defendant Barberio.

Deinst, Serrins, Newman, O'Malley & Epstein by Kenneth I. Wirfel, New York City, for defendant Joseph L. Macchia, Jr.

WEXLER, District Judge.

In the above-captioned criminal action, by superseding indictment filed June 30, 1993 (the "Superseding Indictment"), the government charges defendants Joseph A. Macchia, his three sons Lawrence Macchia, George Macchia and Joseph L. Macchia, Marat Balagula, John Barberio, Viktor Batuner and Michael Varzar with conspiracy to evade the federal gasoline excise tax in violation of 18 U.S.C. §§ 371 and 3623. In addition, the Superseding Indictment charges various of the defendants with attempted excise tax evasion in violation of 26 U.S.C. § 7201 and 18 U.S.C. §§ 2 and 3623. Presently before the Court is defendant Lawrence Macchia's ("Macchia") motion to dismiss the Superseding Indictment on the basis of a written immunity agreement between himself and the government or, in the alternative, to conduct a pretrial hearing pursuant to *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

## I. BACKGROUND

Count One of the Superseding Indictment charges defendants with participating in a conspiracy to evade over $85 million in federal gasoline excise taxes, on nearly one billion gallons of gasoline, stemming from a "daisy chain" scheme occurring "from about the end of 1982 or beginning of 1983 ... and continuing thereafter up through and including the middle of 1988." Superseding Indictment ¶ 2. In a "daisy chain" scheme, gasoline taxes are evaded by the creation of a "burn company," generally owned under an alias, which issues invoices reflecting that the applicable excise tax had been paid. By the time the government discovers the nonpayment of tax, the "burn company" will have been dissolved and unavailable to pay the tax.

In short, the Superseding Indictment alleges that a company called New York Fuel Terminal Corporation ("NYFT"), controlled by Joseph A. Macchia and his three sons, sold large quantities of gasoline to unlicensed companies without paying to the United States the federal excise tax due and owing on those sales. NYFT allegedly sold the gasoline to the unlicensed companies in a variety of ways, and created a variety of falsified documents and records to cause the Internal Revenue Service to believe that "burn companies," and not NYFT, owed the

excise taxes on the gasoline sold by NYFT to the unlicensed companies.

The Superseding Indictment also charges various of the defendants in six counts with attempted excise tax evasion in violation of 26 U.S.C. § 7201 and 18 U.S.C. §§ 2 and 3623. Macchia is charged in four of these counts—Counts Four through Seven. Each of these counts alleges that Macchia and certain other defendants attempted to evade federal excise taxes due and owing from NYFT to the United States by preparing and filing (or causing to be prepared and filed) false quarterly excise tax returns, and by, among other things, making or causing to be made false books and records, false invoices and documents, false statements to IRS employees, and by concealing assets and covering up sources of income. Count Four concerns the period May 1, 1986 to October 31, 1986, and the tax quarter ending September 30, 1986. Count Five concerns the period October 1, 1986 to January 31, 1987, and the tax quarter ending December 31, 1986. Count Six concerns the period July 1, 1987 to October 31, 1987, and the tax quarter ending September 30, 1987. Count Seven concerns the period October 1, 1987 to January 31, 1988, and the tax quarter ending December 31, 1987.

Prior to April 1986, the United States Department of Justice ("DOJ") had been investigating alleged tax evasion in the gasoline industry. Part of this investigation included an investigation of NYFT, which was represented by the law firm of Herzfeld & Rubin, P.C. ("H & R") in connection with the investigation. One of the H & R attorneys on the matter was Terry Myers, Esq. ("Myers"). In connection with the investigation, NYFT produced a large volume of documents subpoenaed by the government. Up to that point in time, according to Myers, the government, by Special Assistant United States Attorney Ronald W. Hayward ("SAUSA Hayward"), had informed Myers that NYFT was considered at least a witness in the government's investigation. Affidavit of Terry Myers, dated November 3, 1993 ("Myers Aff."), ¶ 3.

In April 1986, before Macchia or NYFT became targets, the government requested that Macchia submit to an interview. Through Myers, Macchia agreed to be interviewed, but "not without an appropriate immunity agreement." Myers Aff. ¶ 3.

Prior to the first interview session, which was held on April 18, 1986, an informal immunity agreement, in a letter dated April 16, 1986, was prepared by DOJ and signed by Special Assistant United States Attorney Christopher Ulrich, and presented to Myers. The April 16 letter, at that point, provided:

This letter will serve to confirm our understanding of the proposed interview of your client, Lawrence Macchia, by attorneys of the U.S. Department of Justice, and Internal Revenue Service, and Special Agents of the Federal Bureau of Investigation and Internal Revenue Service to be held on April 18, 1986. The following understanding exists between you, on behalf of Lawrence Macchia, and the Office of the U.S. Department of Justice, Organized Crime Strike Force for the Eastern District of New York:

1. This Office, in conjunction with a Special Grand Jury sitting in this District, is conducting investigations concerning possible violations of federal criminal laws, including the crime of racketeering (18 U.S.C. § 1961) and various tax laws (Title 26 U.S.C.) in connection with the gasoline industry;

2. In connection with the above investigation, Lawrence Macchia has agreed to be interviewed on April 18, 1986, by government attorneys and agents and to provide complete and truthful responses to all questions asked of him regarding his knowledge of, and participation in, any criminal activity under investigation by this Office;

3. Any truthful statements made by Lawrence Macchia in response to questions asked of him by government attorneys and agents during this interview will not be used against Lawrence Macchia in any criminal prosecution by the United States government, or by the State of New York, or its political subdivisions;

4. The foregoing constitutes the entire understanding reached by the parties regarding the interview of Lawrence Macc-

hia on April 18, 1986. No additional understandings, promises, agreements or conditions have been entered into other than those set forth in this letter, and none will be entered into unless in writing and signed by all parties.

. . . .

At some point prior to commencing the first interview, the government and Macchia's counsel agreed to certain handwritten additions to paragraph three of the April 16 letter. Specifically, the following was added after the word "interview": "or any information arising from or relating thereto." In the margin adjacent to paragraph three appears the notation "R. Hayward Special Assistant United States Attorney." At a hearing on this motion, Myers testified that the interlineation was made by an H & R partner, Herbert Rubin ("Rubin"), and the margin notation was made by SAUSA Hayward. Tr. 39. Neither party, however, submitted testimony of either Rubin or SAUSA Hayward regarding the Immunity Agreement or this interlineation. The letter immunity agreement, dated April 16, 1986, in its final form was then executed by Myers on behalf of H & R and by Macchia (the "Immunity Agreement"). Macchia then participated in the April 18 interview and three additional interview sessions, the last of which concluded on July 24, 1986. Each of the interview sessions was subject to the terms ·of the Immunity Agreement.

By this motion, Macchia seeks dismissal of the Superseding Indictment contending that the Immunity Agreement granted him both "transactional immunity" and "use immunity." On this basis, he argues that the transactional immunity granted to him precludes his prosecution for the offenses alleged in the Superseding Indictment. Macchia argues that, in any event, the use immunity granted to him requires dismissal of the Superseding Indictment because the government used his immunized statements against him in violation of the Immunity Agreement, or, in the alternative, a hearing, commonly known as a *Kastigar* hearing, to determine whether the government employed independent sources for the information and documents it used in the investigation and used or plans to use in

his prosecution. As for any *Kastigar* hearing, Macchia requests that it be held before trial. In the alternative, Macchia requests a severance from the other defendants.

In opposition to the motion, the government contends that the Immunity Agreement conferred direct use immunity and derivative use immunity (together referred to simply as "derivative use immunity"), not transactional immunity, but that, in any event, Macchia breached the Immunity Agreement by providing untruthful answers at the interview sessions. As a result of Macchia's alleged breach, the government argues that the Immunity Agreement is void and unenforceable, thereby permitting the government to use Macchia's interview statements and information derived therefrom to prosecute him on the charges in the Superseding Indictment. In addition, the government argues that if a *Kastigar* hearing is required it should be held, if necessary, after trial.

After an initial oral argument on this motion on January 18, 1994, Macchia offered to establish for the Court that his statements were so inextricably intertwined with the subject matter of the Superseding Indictment that a hearing would be necessary to determine whether the government had independent sources for the information and documents it used in the investigation and used or plans to use in the prosecution. On March 11 and 18, 1994, this Court held a hearing at which Myers testified concerning the details of Macchia's interviews with the government. According to Myers, the interviews involved discussions of a variety of subjects regarding Macchia's role and participation in the business affairs of NYFT and affiliated companies, as well as his knowledge of and contact with persons and entities in the gasoline industry. Myers testified that during these interviews Macchia reviewed certain documents and discussed specific transactions engaged in by NYFT. Myers' testimony, his contemporaneous notes from the interviews, and documents introduced with his testimony made apparent that the subject matter of the interviews was sufficiently connected with the subject matter of the Superseding Indictment. Thereupon, the

Court ended the hearing and directed further submissions of authority on the issues raised.

The issues posed to the Court, as framed by Macchia in his submission to the Court, dated April 8, 1994, are as follows:

(1) whether the April 16, 1986, letter agreement between the government and Mr. Macchia conferred upon him transactional immunity [and use immunity], or, as the government claims, [only] derivative use immunity;

(2) whether, if the letter immunity agreement confers only derivative use immunity, the hearing mandated under *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653 [32 L.Ed.2d 212] (1972), should be held prior to trial, or, as the government claims, following trial; and

(3) whether, under the terms of the letter immunity agreement, in the absence of any such language, any untruthful statement by Mr. Macchia during the four interview sessions void the letter immunity agreement and, if so, how, and by what standard, must the government prove that Mr. Macchia's statements were untruthful.

Letter from Defendant's Counsel to the Court, dated April 8, 1994, at p. 3 (emphasis omitted).

## II. *DISCUSSION*

### A. *Type of Immunity Granted*

■ As posed by Macchia, the first issue this Court must decide is whether the Immunity Agreement conferred upon Macchia use and transactional immunity or only derivative use immunity. In short, transactional immunity is "immunity from prosecution on any charges related to the witness's testimony." *Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972); *United States v. Nemes*, 555 F.2d 51, 55 (2d Cir.1977). By contrast, derivative use immunity is "[i]mmunity from use of compelled testimony, as well as evidence derived directly and indirectly therefrom." *Kastigar*, 406 U.S. at 444, 92 S.Ct. at 1656; *United States v. Pelletier*, 898 F.2d 297, 302 (2d Cir.1990); *see also United States v. Plummer*, 941 F.2d 799, 803 (9th Cir.1991) (distinguishing direct use immunity from derivative use immunity in an informal immunity agreement).

■ Under established principles, the Immunity Agreement must be interpreted according to principles of contract law. *See United States v. Liranzo*, 944 F.2d 73, 77 (2d Cir.1991). Under general principles of contract law, "where the language of a contract is unambiguous, the parties' intent is discerned from the four corners of the contract." *See id.; see also Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir.1990). Moreover, "[l]anguage whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation." *Metropolitan Life*, 906 F.2d at 889. Indeed, the "court should not find the language ambiguous on the basis of the interpretation urged by one party, where that interpretation would 'strain[ ] the contract language beyond its reasonable and ordinary meaning.'" *Id.* (quoting *Bethlehem Steel Co. v. Turner Construction Co.*, 2 N.Y.2d 456, 161 N.Y.S.2d 90, 93, 141 N.E.2d 590, 593 (1957)). Where the contract language is unambiguous, the parties' rights "should be fathomed from the terms expressed in the instrument itself rather than from extrinsic evidence as to terms that were not expressed or judicial views as to what terms might be preferable." *Id.*

■ Macchia contends that although the Immunity Agreement initially conferred "use" immunity, "by the process of negotiation, it was transformed into an agreement that also grants Mr. Macchia transactional immunity." Affidavit of Gerald B. Lefcourt, dated November 8, 1993 ("Lefcourt Aff."), ¶ 16. Macchia claims that this "transformation" to transactional immunity is evidenced by the handwritten interlineation in paragraph three—"or any information arising from or relating thereto." Macchia claims that this wording created immunity for "all offenses related to statements he made in [the] four interviews." Memorandum of Law in Support of Defendant Lawrence Macchia's Pre–Trial Motions ("Def.Mem."), at 6–7. He claims this intent is evident in that the interlineation is "separated from the 'use' portion of the grant of immunity by an 'or.'" Reply

Memorandum of Law in Support of Defendant Lawrence Macchia's Pre–Trial Motions ("Reply Mem."), at 7. As Macchia reasons, "since the government cannot use any information *relating to* the substance of Mr. Macchia's statements, he cannot be prosecuted for any offenses *relating to* the subject matter of those statements." Def.Mem. at 10 (emphasis in original). Based on this interpretation of the Immunity Agreement, Macchia concludes that the Immunity Agreement precludes his prosecution here "since the offenses charged in the [Superseding] Indictment are directly related to the subject matter of [his interview] statements." *Id.* at 7.

In opposition, the government denies that it intended to grant transactional immunity by reason of the addition to paragraph three. That language, the government argues, reflected a change from use immunity to a grant of derivative use immunity only.

■ This Court finds that the language of the Immunity Agreement is unambiguous on its face, notwithstanding the different interpretations now urged by the parties. *See Metropolitan Life,* 906 F.2d at 889. Consequently, its proper construction is a matter of law for the Court. That being the case, this Court finds that the Immunity Agreement conferred upon Macchia derivative use immunity only. Contrary to Macchia's imaginative interpretation, the Immunity Agreement does not grant him immunity for "offenses related to" his interview statements. Rather, the interlineation in paragraph three extends the grant of immunity for Macchia's "truthful statements" to include immunity for information arising from or relating to *those statements,* an indication of derivative use immunity, not transactional immunity. The prohibition is on "use" in any prosecution of statements and information derived therefrom, and not, as Macchia suggests, on prosecution for offenses relating to the subject matter of those statements. Macchia's interpretation must be rejected as it strains the contract language beyond its reasonable and ordinary meaning. *See id.* No where does the Immunity Agreement express an intent to prohibit prosecution of offenses relating to the subject matter of Macchia's interview

statements. Indeed, the interlineation comes before the language prohibiting use (*i.e.,* "will not be used against Lawrence Macchia in any criminal prosecution"), indicating that it merely broadens the prohibition on "use." Rationally interpreted, the agreement provided for "use immunity" before the interlineation in paragraph three, and "derivative use immunity" after the interlineation. Notably, Macchia was represented by experienced counsel at the time he negotiated and executed the Immunity Agreement. Had the parties intended to prohibit prosecution, rather than only derivative use of statements and information derived therefrom, they surely could have chosen words to effectuate this intent.

■ In opposition to the motion, the government asserts that, in any event, the Immunity Agreement does not apply to crimes committed after Macchia's interviews concluded on July 24, 1986, that is, to future criminal conduct. In reply, Macchia argues that the Immunity Agreement conferred immunity to all offenses charged in the Superseding Indictment, including offenses allegedly committed after the interviews. Regardless of Macchia's argument as to the applicability of the Immunity Agreement to future conduct, because this Court holds that the Immunity Agreement grants derivative use immunity only, not transactional immunity, none of the counts must be dismissed. Nevertheless, the derivative use immunity granted does extent to subsequent offenses committed as part of a course of continuing criminal activity, but it does not extend to criminal activity which occurred wholly in the future or wholly unrelated to the immunity. *See United States v. Gallo,* 859 F.2d 1078, 1081–82 (2d Cir.1988), *cert. denied,* 490 U.S. 1089, 109 S.Ct. 2428, 104 L.Ed.2d 986 (1989); *United States v. Quartermain,* 613 F.2d 38, 42 (3d Cir.), *cert. denied,* 446 U.S. 954, 100 S.Ct. 2923, 64 L.Ed.2d 812 (1980); *United States v. Brown,* 763 F.Supp. 1518, 1531–32 (D.Ariz.1991), *aff'd,* 979 F.2d 1380 (9th Cir. 1992). Thus, the Immunity Agreement extends to the conspiracy alleged in Count One, which the Superseding Indictment alleges Macchia participated in from "about the end of 1982 or beginning of 1983 . . . and continu-

ing thereafter up through and including the middle of 1988," Superseding Indictment ¶ 2, and Count Four which occurred, for the most part, contemporaneously with the interviews. From the allegations of the Superseding Indictment, this Court can not say that the offenses alleged in Counts Five through Seven occurred wholly in the future or wholly unrelated to the ongoing criminal activity alleged in Count One, the conspiracy to evade gasoline excise taxes, which allegedly was ongoing at the time of the interviews and continued to 1988. Accordingly, based on the record thus far, the Immunity Agreement applies to these offenses as well.

### B. Timing of Kastigar Hearing

 Based on this Court's determination that the Immunity Agreement conferred derivative use immunity only, and not transactional immunity, the second issue to be decided is whether the hearing pursuant to *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), should be held prior to trial or, if necessary, after trial. While under normal circumstance a *Kastigar* hearing should be conducted before trial, the circumstances here suggest that the better course would be to defer such a hearing, if necessary, until after trial. First, the government claims that Macchia breached the Immunity Agreement, thereby rendering it void and unenforceable. Whether Macchia breached the Immunity Agreement can better be determined upon a fully developed trial record. Statements made, and information provided, by Macchia to the government can better be assessed in light of a fully developed trial record. Second, after a trial,

this Court will be in a better position to determine whether the government has independent sources for the information and documents it used in the investigation and at trial. Third, the government has expressed legitimate security concerns for the safety of witnesses who may be required to testify at a pretrial hearing, based largely on the presence in this action of co-defendant Marat Balagula ("Balagula"). Balagula was previously convicted in this Court for similar crimes, in an action involving some of the same defendants and witnesses (as made clear from prior motions by certain other defendants in this action), and security concerns were great in that action as well. *See, e.g., United States v. Gregory,* 611 F.Supp. 1033, 1042 (S.D.N.Y.1985).[1]

Accordingly, in this Court's discretion, a *Kastigar* hearing (if it becomes necessary) will be delayed until after trial so that a determination of this motion can be made, informed by a fully developed trial record. *See United States v. Rivieccio,* 723 F.Supp. 867, 868 (E.D.N.Y.1989), *aff'd,* 919 F.2d 812 (2d Cir.1990), *cert. denied,* 501 U.S. 1230, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991); *United States v. Corrao,* 1993 WL 63018, slip op. at 2 (E.D.N.Y. March 1, 1993).[2]

Because there is no basis for a severance, Macchia's alternative request for a severance is denied.

### C. Determination of, and Remedies for, Breach

 The government claims that Macchia breached the Immunity Agreement by failing to provide complete and truthful answers to the questions asked of him. The government

---

1. For example, in determining to conduct a *Kastigar* hearing after trial, the court in *Gregory* stated:

 To conduct the hearing in advance of trial would require disclosure of the Government's proof, apart from that already made available to the defendants, which in the light of demonstrated experience in the first trial may impede the Government's prosecution. The risk of disappearance of witnesses in this case is not hypothetical. Upon the first trial two witnesses were unavailable because they fled the jurisdiction under the influence of one of the trial defendants. While no charge is made against Vinieris in this respect, the fact is that those witnesses were unavailable. The Government

is entitled to protection against a repetition of the offense. Accordingly, Vinieris may renew his motion for a "taint" hearing after the trial, if necessary.

 *Gregory,* 611 F.Supp. at 1042.

2. Macchia's current attorney, Gerald Lefcourt, states that in April 1993 the prosecutor, Special Assistant United States Attorney Stephen G. Huggard, admitted that he was unaware of the Immunity Agreement and requested a copy from Lefcourt. Lefcourt Aff. ¶ 16. Based on the Court's determination to defer any *Kastigar* hearing until after trial, the Court need not address, at this time, the effect, if any, of this allegation.

argues that Macchia's breach voided the Immunity Agreement, thereby abrogating his immunity protection and permitting the government to use his interview statements and information derived therefrom for all of the charges in the Superseding Indictment. Macchia, on the other hand, argues that the government's sole remedy for untruthful statements by him during the four interview sessions, if proved, is to charge him with perjury or giving a false statement.[3] Thus, the third issue before the Court is whether alleged untruthful statements by Macchia, if proved, render the Immunity Agreement void, and, if so, what is the standard for proving breach.

 the Second Circuit has recognized, because a "cooperation/immunity agreement is in the nature of a contract, its effect is strongly influenced by contract law principles." *United States v. Pelletier*, 898 F.2d 297, 301 (2d Cir.1990). "The remedies available in event of breach, as well as the conditions constituting breach, are government by the agreement." *Id.* at 301–02 (citations omitted); *see United States v. Castelbuono*, 643 F.Supp. 965, 968–69 (E.D.N.Y. 1986). In other words, "the scope and consequences of the immunity conferred are governed by the terms of the agreements." *Pelletier*, 898 F.2d at 302. "Unlike the normal commercial contract, however, due process requires that the government adhere to the terms of any ... immunity agreement it makes." *Id.*

 Under the terms of the Immunity Agreement, Macchia's principal obligation was to provide "complete and truthful answers to all questions asked of him regarding his knowledge of, and participation in, any criminal activity under investigation." Immunity Agreement ¶ 2. While the Immunity Agreement does not provide a yardstick for determining breach by "untruthful statements," not every untruthful statement would constitute a breach. Rather, to establish breach, the government must prove material untruthful statements amounting to a "material and substantial breach." *See Castelbuono*, 643 F.2d at 971; *see also United States v. Fitch*, 964 F.2d 571, 574–75 (6th Cir.1992). Moreover, material omissions may also constitute a material and substantial breach, as the Immunity Agreement expressly requires "complete" answers to questions.[4]

 As for whether a breach has occurred, the government may not make this determination unilaterally. *See United States v. Tarrant*, 730 F.Supp. 30, 32 (N.D.Tex.1990). Instead, the government has the burden to prove Macchia's breach, and must meet this burden by a preponderance of the evidence. *See Fitch*, 964 F.2d at 574–75; *Tarrant*, 730 F.Supp. at 32.

 As for the effect of a breach, Macchia argues that the government is limited to a prosecution for perjury or giving a false statement. Macchia relies on *Pelletier* and

3. In addition, Macchia maintains that until this motion was filed, some seven years after the Immunity Agreement was executed, the government never sought to rescind the Immunity Agreement for non-compliance by Macchia and never informed Macchia that they considered any of his answers untruthful. Macchia argues that this "abject failure to disavow the [Immunity Agreement] during the intervening seven years estops the government from claiming at this late date that it is relieved from its obligations under the agreement due to any alleged non-compliance by Mr. Macchia." Reply Mem. at 9. This passage of time alone, which appears to be the sole basis urged for an estoppel, however, is not sufficient to give rise to an estoppel, the essence of which is detrimental reliance. *See Palermo v. Warden, Green Haven State Prison*, 545 F.2d 286, 295 n. 12 (2d Cir.1976), *cert. dismissed*, 431 U.S. 911, 97 S.Ct. 2166, 53 L.Ed.2d 221 (1977). Absent detrimental reliance on the government's

failure to claim breach earlier or other conduct of the government, Macchia's estoppel argument must be rejected.

4. In *Castelbuono*, the court held that "a bad faith, intentional, substantial omission" can constitute a "materially false statement":

Although an inadvertent omission or oversight would not rise to the level of a materially false statement so as to constitute a breach of the agreement, a bad faith, intentional, substantial omission ... does constitute a materially false statement and thereby a breach of the agreement.

643 F.Supp. at 971; *but cf. United States v. Packwood*, 848 F.2d 1009, 1012 (9th Cir.1988) (information that was merely incomplete and not actually false held not a breach of a plea agreement which literally provided that false information constitutes breach).

*Fitch, supra.* Both of those cases are distinguishable from the present one, because the informal immunity agreement in those cases expressly provided that the government's only remedy for breach was a prosecution for perjury. *See Pelletier,* 898 F.2d at 302; *Fitch,* 964 F.2d at 575. Thus, the *Pelletier* court held that because the government had granted use immunity and limited its remedy for false testimony to a prosecution for perjury, it was "not free to use that testimony either to indict or to obtain convictions on nonperjury charges." *Pelletier,* 898 F.2d at 302. Similarly, the *Fitch* court stated that the "immunity agreement did not provide that it would be 'null and void' in the event Fitch lied, nor was it silent as to the consequences to Fitch of telling a lie. Instead, the agreement provided that Fitch could only be prosecuted for perjury, and we believe that the government should not be permitted to argue that it is not now bound by that provision." *Fitch,* 964 F.2d at 575. Because of the explicit limitation on the government's remedy, *Pelletier* and *Fitch* are not applicable here.

Macchia also relies on *United States v. Kurzer,* 534 F.2d 511 (2d Cir.1976). In *Kurzer,* defendant Kurzer agreed to be interviewed by government agents concerning a target named Steinman. In exchange, he was promised that if the government investigators were satisfied that he was truthful and cooperative, he would receive statutory immunity under 18 U.S.C. § 6003, and would testify before the grand jury; if the investigators were not satisfied with his cooperation he would not receive formal immunity or testify before the grand jury. "In any event, Kurzer was promised that what he told investigators would not be used against him."

*Id.* at 513. Kurzer met government investigators and testified before a grand jury under a formal grant of immunity under 18 U.S.C. § 6003. Steinman was subsequently indicted. Thereafter, Steinman cooperated with the government and gave information which led to Kurzer's indictment. Kurzer moved to dismiss the indictment, claiming the information used to indict him (*i.e.,* Steinman's cooperation information) was derived from the immunized testimony or information that he had given and that led to Steinman's indictment. The district court granted the motion after a hearing. On appeal, one of the government's arguments was that Kurzer "forfeited his immunity by lying to the Government while immunized." *Id.* at 518. The Second Circuit rejected this argument, stating that the "ordinary remedy for the Government when an immunized witness lies or fails to cooperate fully is a prosecution for perjury or for contempt, rather than abrogation of the immunity agreement and use of the information truthfully given by the immunized witness to prosecute him for other offenses." *Id.* The immunity statute explicitly prohibits the use of immunized testimony "except in a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order." 18 U.S.C. § 6002.[5] Thus, *Kurzer* is inapplicable as it involved a grant of statutory immunity. In addition, as the court stated, the government had promised Kurzer that what he told investigators would not be used against him, and the government "concede[d] that this informal grant of immunity prevents use of the information received from Kurzer to the same extent as a formal grant of immunity." *Kurzer,* 534 F.2d at 513 n. 3.[6]

---

**5.** Nevertheless, the Second Circuit remanded the case, directing the district court to hear testimony as to whether Steinman's agreement to cooperate was based on the indictment to which Kurzer's immunized testimony contributed. *Kurzer,* 534 F.2d at 517. The district court had excluded testimony offered by the government that Steinman would have testified against Kurzer based on the case the government developed against Steinman independent of Kurzer's immunized information. *Id.*

**6.** Macchia's reliance on *United States v. Williams,* 809 F.2d 1072 (5th Cir.), *cert. denied,* 484 U.S. 896, 108 S.Ct. 228, 98 L.Ed.2d 187

(1987), is similarly misplaced. Macchia cites *Williams* as applying "the *Kurzer* standard in the absence of any formal immunity agreement." Letter from Defendant's Counsel to the Court, dated April 8, 1994, at p. 10. However, the *Williams* court concluded that the record belies the government's argument on appeal that Grossman was protected by an agreement only contractual in nature.... The only statutory requirement lacking in this instance was a court order.... [W]e hold that the informal use immunity bestowed upon Grossman shields him to the same extent as would a court order had it issued.

Unlike the informal immunity agreements in *Pelletier* and *Fitch,* the Immunity Agreement here is silent as to the effect of a breach by Macchia for untruthful statements and there is no indication that the government intended to limit its remedy in the event of such breach to a prosecution for perjury or giving a false statement. Under these circumstances, this Court holds that a material and substantial breach by Macchia for untruthful statements is grounds for abrogating the immunity, *i.e.,* voiding the Immunity Agreement, and permitting the government to use his statements and information derived therefrom to indict and prosecute him on nonperjury charges. If Macchia failed to live up to the terms of the bargain he voluntarily struck with the government, he loses the benefit bargained for, *i.e.,* immunity.

■ While an informal immunity agreement may specify that in the event of breach the government may use the information to indict or prosecute the immunized witness on nonperjury charges, *see, e.g., Tarrant,* 730 F.Supp. at 32, the absence of such a provision does not preclude this remedy. For example, in *Castelbuono, supra,* the immunity agreement provided that if defendant Castelbuono made any false material statements he would forfeit whatever immunity he had and the government could use his statements or any evidence derived therefrom. *Castelbuono,* 643 F.2d at 969. However, the government also argued that Castelbuono breached the immunity agreement by "his overall lack of good faith in fulfilling his obligations under it." *Id.* Although the agreement did not specify a remedy for bad faith on the part of Castelbuono in fulfilling his end of the bargain, the court held that "there is no indication of an intention to limit the Government's remedy in case of breach to a prosecution for perjury or false statement." *Id.*

■ Macchia also argues that paragraph 4 of the Immunity Agreement, a so-called "merger clause," precludes the government from seeking this remedy. Contrary to

Macchia's argument, the government is not attempting to enforce an oral modification to the Immunity Agreement. Moreover, the "merger clause" does not preclude imposition of this remedy.

### CONCLUSION

In sum, the Court concludes that (1) the Immunity Agreement grants derivative use immunity only, not transactional immunity and use immunity; (2) a *Kastigar* hearing should be held, if necessary, after trial of the Superseding Indictment; and (3) if the government proves, by a preponderance of the evidence, material and substantial breach of the Immunity Agreement by Macchia, it may properly use his interview statements and information derived therefrom to indict and prosecute him on the charges in the Superseding Indictment.

For the reasons above, defendant Lawrence Macchia's motion to dismiss the Superseding Indictment is denied; the alternative request to conduct a *Kastigar* hearing is denied without prejudice to its renewal, if necessary, after trial of the Superseding Indictment; and the request for a severance is denied.

SO ORDERED.

809 F.2d at 1081–82. Thus, the court viewed the immunity granted as equivalent to a grant of statutory immunity under 18 U.S.C. § 6002.